# Hendler, Appellant, *v.* Quigley.

*Landlord and tenant—Extension of term—Evidence—Question for jury.*

1. On the trial of an issue to determine whether a landlord had granted to his tenant an extension of his term for a year, the case is for the jury where the tenant's evidence as to the extension is corroborated by that of his wife and daughter and several witnesses as to declarations made by the lessor scarcely reconcilable with any other theory, and by the further fact that a new liquor license for the leased premises had been applied for by the lessee with the knowledge of the lessor who had himself signed the application.

*Landlord and tenant—Eviction—Licensed premises—Liquor license—Profits.*

2. In a proceeding by a tenant, a licensed saloon keeper, against his landlord, to recover damages for a wrongful eviction, the tenant may show as an element of damage the profits he could have made for the unexpired term, including the period after he had sold his license for a small sum. In such a case the price obtained for the license is not necessarily the full measure of compensation for the loss of the balance of the term. The tenant may show such loss by his own evidence, by the record of his cash register, by the record of bar receipts during the corresponding months of previous years and by bills and memoranda tending to show at least the approximate cost of what was sold.

3. Damages may be recovered for loss of profits caused by a breach of contract, and they are never excluded simply because they are profits. If it reasonably appear that profits would have been made had the terms of the contract been observed, and that their loss necessarily followed its breach, they may be recovered as damages if the evidence is sufficiently certain and definite to warrant the jury in estimating their extent. The law does not require absolute certainty as to the data upon which profits are to be estimated, but certainty to a reasonable degree or extent so that the damages may rest upon a definite basis and not wholly in speculation and conjecture.

*Landlord and tenant—Punitive damages—Eviction.*

4. In a proceeding by a licensed saloon keeper against his landlord to recover damages for a wrongful eviction, a verdict, including exemplary damages, will be sustained, where the wife of the tenant testifies that the landlord brought a crowd of foreigners from a quarry to aid the constable; that they came during a temporary absence of her husband, and refused to await his return; that packages of liquor were broached and given to the men, and the contents not consumed were wasted; that cigars were taken; that furniture and dishes were broken; that the men broke off part of a wardrobe with a hatchet; that mattresses were torn and scattered across the road for cows to run over them; and that the men engaged in the eviction were full so that they could not stand up, and that the lessor gave them liquor.

Argued March 3, 1908. Appeal, No. 20, Jan. T., 1908, by plaintiff, from judgment of C. P. Luzerne Co., Oct. T., 1903, No. 451, on verdict for defendant in case of Joseph Hendler v. T. F. Quigley. Before RICE, P. J., PORTER, HENDERSON, HEAD and BEAVER, JJ. Affirmed.

Appeal from judgment of a justice of the peace in proceedings

under the act of 1863 to obtain possession of leased premises. Before FERRIS, J.

The facts are stated in the opinion of the Superior Court.

Plaintiff presented the following points:

2. In no event shall the jury allow in computing the damages, in case they should find for the defendant, any money value for loss of business or good will, except from the alleged eviction on August 18 to October 9, 1903, the date when the defendant transferred his license to Passavento.

3. There is not sufficient evidence of any value as to the good will in itself to warrant the jury in awarding damages for this as a distinct item.

4. Under the evidence in this case the defendant is not entitled to any damages for profit of business.

The answer of the court to these points being as follows:

The second, third and fourth points, gentlemen, I answer as follows: One of the items of damages, if any, would be the fair value to the tenant of the use of the property for the balance of the term, if you find that term was extended until April, 1904. And in estimating that fair value you should take into consideration the evidence relating to the amount and profits of the tenants' business, and the evidence bearing upon the question as to whether in the transfer of the license to Passavento the good will of the business from October 1 was also transferred and the defendant compensated therefor; the question in that regard being whether he suffered any loss as to the balance of the term after October 9, 1903. [2–4]

5. If the jury find for the defendant, and also find that the eviction was wanton and malicious, then in addition to compensatory damages, vindictive or exemplary damages may be allowed. *Answer:* That we have already spoken to you about in our general charge, and that is affirmed. If you allow such damages they should, however, be reasonable in amount. [5]

Verdict and judgment for defendant for $750. Plaintiff appealed.

*Errors assigned* were (1) in refusing binding instructions for defendant; (2–5) above instructions, quoting them.

*D. A. Fell*, with him *E. A. Lynch*, for appellant.—There is not sufficient evidence in the case to show that any parol proposition of appellant to lease for one year was ever accepted by appellee: Dimeling v. R. R. Co., 215 Pa. 480; Purves's Est., 196 Pa. 438; Butler v. Kemmerer, 218 Pa. 242.

The good will of a tavern is local and does not exist independently of the house in which it is kept: Musselman's App., 62 Pa. 81.

When the damages claimed for profits are so speculative and dependent upon numerous and changing contingencies so that the amount is not susceptible of actual proof with any reasonable degree of certainty, no recovery can be had for them: Shirley v. Keagy, 126 Pa. 282; McKnight v. Ratcliff, 44 Pa. 156.

If the defendant was wrongfully disposed, under all the evidence in this case he was not entitled to anything more than the pecuniary loss caused by his eviction: Quinn v. McCarty, 81 Pa. 475; Barnett v. Reed, 51 Pa. 190; Lake Shore, etc., Ry. Co. v. Rosenzweig, 113 Pa. 519; Pittsburg, etc., Ry. Co. v. Lyon, 123 Pa. 140.

*M. H. McAniff*, with him *T. M. Conniff* and *C. B. Lenahan*, for appellee, cited as to the question of profits: Chapman v. Kirby, 49 Ill. 211; Keating v. Condon, 68 Pa. 75.

Cited on the question of exemplary damages: Lord v. Water Co., 135 Pa. 122; Gallagher v. Burke, 13 Pa. Superior Ct. 244; McDonald v. Scaife, 11 Pa. 381; Wiley v. McGrath, 194 Pa. 498; Railway Co. v. Lyon, 123 Pa. 140; Greeney v. Water Co., 29 Pa. Superior Ct. 136.

Opinion by Head, J., February 26, 1909:

The defendant had been the tenant of the plaintiff for a period of five years under a carefully prepared written lease. The term of this lease expired April 1, 1903. The defendant was a licensed innkeeper and had been conducting his business, during the term in the demised premises. It was the contention of the defendant that in the winter of 1902–1903, the plaintiff had agreed, in parol, to an extension of the term of the lease for a period of one year. That relying on this he went

to the expense of preparing and filing an application for the renewal of his license—which was subsequently granted—and made certain repairs, etc.

That the defendant requested such an extension is not denied. If the plaintiff intended to accede to this request neither any particular form of words nor any lengthy statement would be necessary to express such intention. If the testimony of the defendant was credible it would fairly warrant the conclusion that the plaintiff did so intend and plainly enough expressed his assent. In this, the defendant was corroborated by the testimony of his wife and daughter and several other witnesses as to declarations made by Hendler scarcely reconcilable with any other theory; and the further fact that a new license had been applied for with the knowledge of the lessor who had himself signed the application. These circumstances would not, of course, conclude the plaintiff, but certainly necessitated the submission of the question to the jury, and as there is no complaint of the manner of the submission, the verdict establishes that the term of the lease had been extended for one year from April, 1903. The first assignment of error, which complains of the refusal of the court to withdraw this question from the consideration of the jury, must be overruled.

Notwithstanding the extension of the term, the lessor in the early summer of 1903 began proceedings before a magistrate to dispossess his tenant, but they resulted in a judgment in favor of the defendant. This judgment was, however, reversed on certiorari and a new proceeding begun before another justice who gave judgment for the plaintiff which was followed by a writ of possession. The defendant appealed, but this would not supersede the writ of possession which was executed in August, 1903, nearly seven months before the expiration of defendant's term as extended. During the month of October following, the defendant succeeded in selling the license he had obtained and received $75.00 therefor.

The second, third and fourth assignments complain of the action of the court in permitting the jury to consider, as elements of damage, the value of the defendant's business, the

good will incident to such a business when established, and the loss of profits resulting from its destruction, and especially during the period that elapsed between the sale of his license in October, and the expiration of his term the following April.

By the wrongful eviction of the defendant, his license as an innkeeper was uprooted from the only spot where it could produce valuable fruit, his business was broken up, the patronage of his house was scattered, and he was left with a naked personal privilege which could be sold only to one who could secure possession of the licensed premises and win the court's approval of the transfer. We do not think the plaintiff was in a position to insist that the injury resulting from his wrongful act ceased at the date of the sale thus forcibly brought about, or that the price obtained for the license, under the circumstances, was necessarily the full measure of his compensation for the loss of more than five months of his term. He was entitled to recover whatever he lost as a consequence of his eviction. One of the ways in which he undertook to show this loss was by the production of evidence tending to prove the profits he could have reasonably made during that portion of the term of which he was deprived.

In a proper case there is no legal obstacle to the recovery, as damages, of lost profits. The difficulty usually arises in the application to such matters of established rules of evidence. Where sufficient evidence is offered to remove such a question from the domain of the speculative and fanciful to that of the actual and ascertainable, a recovery may be had. In Wilson v. Wernwag, 217 Pa. 82, Mr. Justice MESTREZAT, after an exhaustive review of the cases, thus lays down the principle: "From these authorities, it is clear that damages may be recovered for loss of profits caused by a breach of contract; and that they are never excluded simply because they are profits. If it reasonably appear that profits would have been made had the terms of the contract been observed, and that their loss necessarily followed its breach, they may be recovered as damages if the evidence is sufficiently certain and definite to warrant the jury in estimating their extent. . . . The law does not require absolute certainty as to the data upon which profits

are to be estimated, but certainty to a reasonable degree or extent so that the damages may rest upon a definite basis and not wholly in speculation and conjecture."

In the present case there was evidence, from the record of the cash register, of the bar receipts during the corresponding months of previous years; bills and memoranda were produced tending to show at least the approximate cost of what was sold. This, coupled with the testimony of the defendant, we think, was sufficient to enable the jury to determine that some profits would have been made and to arrive at a rational estimate of their extent. More than this the law does not require. The second, third and fourth assignments are dismissed.

The only remaining assignment alleges the learned court below erred in submitting to the jury the question of punitive or exemplary damages. As before the complaint goes, not to the character of the instructions given on that subject, for they were careful and accurate, but to the refusal of the court to withdraw that question entirely from the jury's consideration.

In Gallagher v. Burke, 13 Pa. Superior Ct. 244, a case of wrongful eviction, this court said: "It is the duty of the court to submit a question of the kind of damages that may be given, to the jury, if there be evidence of aggravation or oppression. Compensation is the rule in the absence of such circumstances. Exemplary damages may follow in the wake of their existence, but there must be evidence on the point. If there is, it is proper to submit it to the jury for the ascertainment of the circumstances that constitute oppression and aggravation."

The wife of the defendant testified that the plaintiff brought a crowd of Italians from the quarry to aid the constable. They came during the temporary absence of her husband and refused to await his return. She declares that packages of liquor were broached and the contents not consumed were wasted; that cigars were taken; that furniture—piano, couch, dining-room table and dishes were broken; that the wardrobe being hard to get down stairs they broke the top off with a hatchet; that "half of the men were full, . . . they could not stand up they were that full;" that Hendler gave them liquor;

that the mattresses "were torn and dirtied and laying over across the road and the cows running over them," etc., etc. The credibility of this witness, as of all others, was for the jury, but it is impossible for us to say, as matter of law, that if the circumstances described actually attended the execution of the writ, they would not constitute that groundwork of aggravation and oppression which would support a verdict for exemplary damages. The court was therefore obliged to submit this question to the jury and did so, as already stated, in a manner which has elicited no criticism from the appellant. The fifth assignment is dismissed.

Judgment affirmed.