## Wilson v. Wernwag, Appellant.

*Contract—Construction of contract—Sale of goods on commissions— Breach of contract—Measure of damages—Profits.*

Where the meaning of an agreement is doubtful, its terms are to be considered in the light thrown on them by approved or admitted illustrative facts. The situation in which the parties stand, the necessities · for which they would naturally provide, the convenience they would · probably seek to secure, and the circumstances and relations of the property in regard to which they have negotiated, are all elements in the interpretation of an ambiguous contract.

In an action on a contract, it appeared that plaintiff was a manufacturer, and that defendants were the sole agents for the selling of plaintiff's goods. Late in the year 1890, plaintiff submitted to defendants certain

propositions in writing. The propositions were made by plaintiff as stated in the writing, "in consequence of the great loss which would be incurred by the sudden changing of his commission house." One of the propositions was as follows: "If defendants will agree to remain in business for one year from January 1, 1891, he (plaintiff), will guarantee the entire business against losses by bad debts for one per cent." This proposition was accepted, and defendants continued in business during the entire year 1891. Late in the year 1891, plaintiffs made this proposition in writing: "Plaintiff hereby agrees to guarantee defendants against all losses from failures, for and in consideration of the sum of one per cent upon the net amount of their sales for the year 1892." The defendants accepted this offer orally. They continued to sell plaintiff's goods until April 1, 1892, when they went out of business. Another firm took their place, accepting transfer from defendants of their accounts, and conducted under their own name the business formerly carried on by the defendants, employing the same manager, using the same store, and the same salesmen and clerks, and conforming substantially to the same rules as to giving credit. *Held,* (1) that the contract between the parties required the defendants to continue the sale of plaintiff's goods during the whole of the year 1892; (2) that for the breach of the contract plaintiff was entitled to recover from defendants one per cent of the total sales, less the losses; and (3) that the sales made and the losses incurred during the remainder of the year 1892, while the business was conducted by the firm which succeeded the defendants, could be taken as the data on which to estimate the commission or profits due the plaintiff.

Damages may be recovered for loss of profits caused by a breach of contract, and they are never excluded simply because they are profits. If it reasonably appear that profits would have been made had the terms of the contract been observed, and that their loss necessarily followed its breach, they may be recovered as damages if the evidence is sufficiently certain and definite to warrant the jury in estimating their extent.

POTTER and ELKIN, JJ., dissent.

Argued Jan. 8, 1907. Appeal, No. 96, Jan. T., 1906, by defendants, from order of C. P. No. 4, Phila. Co., Dec. T., 1895, No. 900, dismissing exceptions to report of referee in case of Thomas H. Wilson v. Theodore Wernwag and T. Russell Dawson, trading as Wernwag & Dawson. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit for breach of contract.

The case was referred to Charles E. Morgan, Jr., Esq., as referee under act of May 14, 1874. The referee filed a report in favor of plaintiff for $7,389.44.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to referee's report, and in entering judgment for plaintiff.

*Peter Boyd*, for appellant.—Neither under the facts nor the decisions ought the agreement made by Thomas H. Wilson, dated November 10, 1891, to be construed as an agreement binding upon Wernwag & Dawson to remain in business during the entire year 1892, or to make any given amount of sales: Lummis & Co. v. Devine, 9 Pa. Superior Ct. 349; Aspdin v. Austin, 5 Ad. & Ellis (N. S.), 671; Ex parte Maclure, L. R. 5 Chan. App. 737; Coffin v. Landis, 46 Pa. 426; Blackstone v. Buttemore, 53 Pa. 266; Rightmire v. Hirner, 188 Pa. 325.

Even if by any possibility the agreement should be construed as binding upon Wernwag & Dawson to remain in business during the entire year of 1892, yet the plaintiff ought not to be awarded as damages the prospective profits that he might have earned from the time of the breach of contract: Rightmire v. Hirner, 188 Pa. 325; Stern v. Rosenheim, 67 Md. 503 (10 Atl. Repr. 221); Washburn v. Hubbard, 6 N. Y. Superior Ct. 11; Rogers v. Davidson, 142 Pa. 436; Reiter v. Morton, 96 Pa. 229; Stern v. Rosenheim, 67 Md. 503 (10 Atl. Repr. 221); Washburn v. Hubbard, 6 N. Y. Superior Ct. 11; Hair v. Barnes, 26 Ill. App. Ct. 580; Pennypacker v. Jones, 106 Pa. 237; Kinports v. Breon, 193 Pa. 309; McKnight v. Ratcliff, 44 Pa. 156; Rightmire v. Hirner, 188 Pa. 325.

The loss of profits can only be compensated for in damages when they are direct and immediate fruits of the contract, and must have been in contemplation of the parties when the contract was made: Kinports v. Breon, 193 Pa. 309; McConaghy v. Pemberton, 168 Pa. 121; Hutchinson v. Snider, 137 Pa. 1; Billmeyer v. Wagner, 91 Pa. 92; Coal Co. v. Foster, 59 Pa. 365; Fleming v. Beck, 48 Pa. 309; Fessler v. Love, 48 Pa. 407; Cincinnati, etc., Gas Co. v. Western Co., 152 U. S. 200 (14 Sup. Ct. Repr. 523).

*Henry Budd*, with him *William C. Stoever*, for appellee. —The measure of damages applied by the referee was proper: Bagley v. Smith, 10 N. Y. 489; Devlin v. Mayor, etc., of New York, 63 N. Y. 8; National Filtering Oil Co. v. Ins. Co., 106 N. Y. 535 (13 N. E. Repr. 337); Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205 (4 N. E. Repr. 264); Fox v. Harding, 61 Mass. 516; Hubbard v. Rowell, 51 Conn. 423; Hoy v. Gronoble, 34 Pa. 9; Imperial Coal Co. v. Port Royal Coal Co., 138 Pa. 45; Simmons v. Brown, 5 R. I. 299; U. S. v. Speed, 75 U. S. 77; U. S. v. Behan, 110 U. S. 338 (4 Sup. Ct. Repr. 81); Kendall Bank Note Co. v. Commissioners, 79 Va. 563.

OPINION BY MR. JUSTICE MESTREZAT, February 25, 1907:

This is an action of assumpsit to recover damages for an alleged breach of contract. The plaintiff was a manufacturer of woolen goods, in the city of Philadelphia. The defendants were commission merchants and carried on the business in Philadelphia and New York. For a few years prior to 1890, they were the sole consignees and agents of the plaintiff in selling his goods, for which they received a fixed percentage of the amount of sales made as compensation for their services. On December 12, 1890, the plaintiff submitted certain propositions to the defendants in writing which they accepted, among which were the following: " In consequence of the great loss which would be incurred by the sudden changing of his commission house, Thomas H. Wilson, makes to Wernwag & Dawson, the following propositions: ' (a) That on and after January 1, 1891 to July 1, 1891, that he will allow Wernwag & Dawson 7½% commissions on all goods sold and entered for his account; (b) That for and in consideration of 1½% on the total sales of Wernwag & Dawson, he will guarantee all accounts sold by them between January 1 and July 1, 1891, this to include goods sold before July 1, 1891, and not entered until after that date; (c) If Wernwag & Dawson will agree to remain in business for one year from January 1, 1891, he will guarantee the entire business against losses by bad debts for one per cent; (d) On or before July 1, 1891, Wernwag & Dawson will decide whether they will remain in business for the balance of the year, say from July 1,

1891 to December 31, 1891. Should they decide to continue in business till December 31, 1891, then they are to pay Thomas H.. Wilson one per cent only for guaranteeing the entire year's business.'"

The defendants continued in business during the year 1891. In October, 1891, the plaintiff requested the defendants to advise him by November 1 whether they intended remaining in business during the year 1892, and said that he was willing to guarantee them against losses for the year of 1892 at one per cent of the net amount of their sales, and would pay them seven and one-half per cent commission, but would not pay $1,500 expenses as he had done during the year 1891. In November, 1891, the plaintiff signed and delivered to defendants the following writing, written and witnessed by Samuel White, the credit man and head bookkeeper of defendants:

"PHILADELPHIA, November 10, 1891.

"Mr. Thomas H. Wilson hereby agrees to guarantee Wernwag & Dawson against all losses from failures, for and in consideration of the sum of one per cent upon the net amount of their sales for the year 1892."

The defendants accepted this offer orally. They continued in business and continued to sell the plaintiff's goods until April 1, 1892, when their firm was dissolved, and they refused thereafter to sell his goods or longer to carry on the commission business.

This action was brought by the plaintiff to recover damages, which he alleges he sustained by reason of the defendants having discontinued their commission business and having declined to continue it during the entire year of 1892, which he claims was a breach of the contract of November 10, 1891. He claims that under the contract between the parties the defendants were to continue the business during the whole of 1892, and that by failing to do so he is injured to the extent of one per cent of the sales which the defendants would have made from April 1, 1892, the date of the dissolution of their partnership, to December 31, 1892, less the losses which they would have sustained during that period. The defendants, on the other hand, deny that the contract between the parties contemplated that they should continue the busi-

ness during the whole of the year 1892, or obligated them to do so, and contend that if such is the correct interpretation of the contract, the proper measure of damages for its breach is not one per cent of the sales which they would have made had they continued in business for the whole year, less the losses ; that such profits are too remote and too uncertain as a measure of damages for the alleged default.   These are the important and controlling questions in the case, and the only questions which we deem it necessary to consider on this appeal.

The case was referred to a referee under the act of May 14, 1874.   He found against the contention of the defendants on both propositions, and his report was confirmed by the court.   He has found and stated at length the facts in the case, and we think his findings are supported by the evidence.

The referee found that " it was understood by both parties to said agreement of November 10, 1891, that an important inducement to the plaintiff to enter into it was the continuance of the defendants in their said business during the whole of the year 1892, and it was the intent and understanding of both parties that defendants should remain in said business during that period."   He, therefore, held that the contract of November 10, 1891, required the defendants to continue their commission business, and to accept and sell the plaintiff's goods during the entire year of 1892.   We are clear that this is a proper interpretation of the contract.   In Lacy v. Green, 84 Pa. 514, Woodward, J., delivering the opinion, says (p. 518) : " Where the meaning of an agreement is doubtful, its terms are to be considered in the light thrown on them by approved or admitted illustrative facts.   The situation in which the parties stand, the necessities for which they would naturally provide, the conveniences they would probably seek to secure, and the circumstances and relations of the property in regard to which they have negotiated, are all elements in the interpretation of an ambiguous contract."   We think the language of the proposition of November 10, 1891, made by Wilson to the defendants, discloses clearly an intention that the business should be continued for the whole of the ensuing year.   His guaranty, as therein expressed, is against all losses from failures, and the consideration which he is to receive is a percent-

age " upon the net amount of their (defendants') sales for the year 1892." The percentage, therefore, was not to be computed upon such sales as they might make in 1892, or until the dissolution of their partnership, or until they discontinued their business, but was stated clearly and distinctly to be upon the " net amount of their sales for the year 1892." When we consider all the circumstances under which the contract was made it is still made more apparent that such is the proper interpretation of the agreement of the parties. The agreement of the previous year between the same parties assists in construing the contract under consideration. By that agreement it appears that the plaintiff apprehended a great loss from any sudden changing of his commission house, and that it was entered into for the purpose of preventing such a change. It is apparent that the same reasons existed for his desire to prevent a sudden change in his commission house when the contract of 1891 was made, and hence it is fair to infer that by the contract of 1891 he intended to guard against a sudden or unexpected changing of his commission house, and desired to fix a definite time on which he might rely for his goods being sold by the defendants. By the contract of 1890 it also appears that the parties considered and agreed that a fair consideration for guaranteeing the business against losses was one per cent on the total sales for an entire year ; and further, that the consideration for guaranteeing the business for a half year should be one and one-half per cent on the sales for that period. In that contract the stipulation for the consideration in the first instance was for a percentage for six months, but with a provision that if the defendants remained in business for the whole year the plaintiff was " to guarantee the entire business against losses by bad debts for one per cent."

It is apparent, therefore, that in determining the rate of commission for guaranteeing the business the length of time was an important and controlling consideration, and that for one year the consideration should be one per cent, and for any time less than a year the rate should be greater.

Another reason, as suggested by the referee, for the conclusion that the contract contemplated a continuance of the business for the whole of the succeeding year, was the fact that the amount of the sales was greater during certain months of

the year than during other months, and that it appeared that during 1891 the heaviest sales were made in June, July and August. With these facts before him, it cannot be assumed that the plaintiff would agree to guarantee against losses for an indefinite time which might exclude the heaviest selling months of the year, and especially should we not presume that the plaintiff would consent to one per cent commission in view of the further fact, suggested above, that he demanded and received one and one-half per cent for guaranteeing against losses for the first six months of the preceding year.

We think it clear that the parties meant what the plaintiff proposed and the defendants accepted on November 10, 1891, that the plaintiff's consideration for guaranteeing against losses was " upon the net amount of their sales for the year 1892," and that, therefore, the contract manifestly contemplated, as understood by both parties, that the defendants should continue in the commission business and sell the plaintiff's goods for the entire year of 1892.

The next and an important question, and one not entirely free from difficulty, is the measure of the plaintiff's damages for the violation of the contract. As we have seen, the defendants dissolved their partnership and discontinued their business on April 1, 1892. The referee found that " after said dissolution, the firm of Minot, Hooper and Co. of New York took the place of the defendants, accepting transfer from defendants of their accounts, and conducted under their own name the business formerly carried on by the defendants, employing the same manager, using the same store and the same salesmen and clerks, and conforming substantially to the same rules as to giving credit." It appears that those who had been the defendants' consignors prior to the dissolution of the partnership, including the plaintiff, thereafter consigned their goods for the balance of 1892 to Minot, Hooper & Co. The goods of the plaintiff in the possession of the defendants at the dissolution of their firm were also transferred to the same firm, and the plaintiff and the defendants agreed as to the quantity and quality of the goods transferred. The referee also found, and his finding was sustained by the court, that " if the defendants had remained in business, the plaintiff would have received one per cent on the amount of net proceeds of

sales, for the balance of the year, less the losses.   The amount
of this difference can be ascertained by subtracting the actual
losses on sales made by Minot, Hooper & Co., during that pe-
riod from one per cent upon the amount of net proceeds of
sales by that firm. . . .   It is reasonably certain that the de-
fendants, had they remained in business and performed their
part of the contract in good faith, would have made the same
sales and losses as were made by their successors."   The ref-
eree, therefore, held that the measure of damages was one
per cent upon the net proceeds of sales made by Minot,
Hooper & Co., from April 1 to December 31, 1892, less the
losses.

Hoy v. Gronoble, 34 Pa. 9, was an action to recover dam-
ages for the breach of a parol contract by which the defend-
ant agreed to employ the plaintiff to cultivate a farm upon
shares.   It was held that the proper measure of damages
was the profit which the plaintiff would have made on the
farm if the contract had not been violated.   In delivering
the opinion, STRONG, J., said (p. 10): "While it is well set-
tled, that a jury are not at liberty to allow mere speculative
damages, yet there are cases in which a plaintiff has been held
entitled to what he would have made had the contract been ful-
filled ; I mean, to what he would have made immediately out of
the contract.   The loss of such profits is not consequential, in
the sense in which consequential damages are sometimes said to
be too remote.   They are in the immediate contemplation of
the parties when the contract is made."   The same learned
judge, delivering the opinion in Adams Express Co. v. Egbert,
36 Pa. 360, says (p. 364): "The loss of profits or advantages,
which must have resulted from a fulfillment of the contract,
may be compensated in damages, when they are the direct
and immediate fruits of the contract, and must therefore have
been stipulated for, and have been in the contemplation of the
parties when it was made."   Hoy v. Gronoble, 34 Pa. 9, was
followed and approved in Wolf v. Studebaker, 65 Pa. 459.

The first two of the above cases are cited in the opinion of
Mr. Justice GREEN in Pennypacker v. Jones, 106 Pa. 237 as
holding that " profits may be recovered where they are ' part
and parcel of the contract itself, entering into and constitut-
ing a portion of its very elements; something stipulated for,

the right to the enjoyment of which is just as clear and plain as to the enjoyment of any other stipulation.' "

Imperial Coal Co. v. Port Royal Coal Co., 138 Pa. 45, was an action to recover damages for violation of a contract by which the defendant agreed to supply the plaintiff company with coal sufficient to keep its coke plant in operation for a definite period. The coal was to be converted into coke for the defendant at a fixed price per ton. The measure of damages for the breach was held to be the net profits which the plaintiff would have made had the contract been fulfilled. In the opinion it is said (p. 47); " While it is undoubtedly true that mere speculative profits cannot be recovered in an action for breach of contract, a careful examination of the assignment shows that the profits in question were not within this rule. The jury have found . . . . that the defendant was to furnish plaintiff with enough coal to keep its sixty ovens in operation for six months, and that the price was to be $1.00 per ton. The profits in such case were not speculative; they did not depend upon the fluctuations of the market, or the demand for coke, and they could be ascertained with mathematical accuracy." This part of the opinion is quoted and approved in the very recent case of Puritan Coke Co. v. Clark, 204 Pa. 556.

Pittsburg Gauge Co. v. Ashton Valve Co., 184 Pa. 36, was an action for the breach of a contract by which the defendant constituted the plaintiff its sole agent for the sale of certain goods within certain designated territory for a term of three years. The plaintiff's compensation was a commission of ten per cent on the amount of sales. Before the expiration of the term, the defendant declared a forfeiture of the contract without sufficient cause. It was held that the plaintiff could show, as bearing upon the damages, the extent and volume of the business under his own agency, and the extent and volume of it under the agent appointed in his place.

The very recent case of Singer Manufacturing Co. v. Christian, 211 Pa. 534, was an action to recover for the price of a number of machines. The defendant claimed that he had purchased them by an oral contract with the plaintiff's agent by which it was agreed that the plaintiff would furnish work to keep the machines going, and that they were to be paid for

out of the profits of such work, and that sufficient work was not furnished. The defendant alleged a breach of contract on the part of the plaintiff and claimed as a set-off the damages he had sustained. It was held that the measure of his damages for the breach was the profit which the defendant might have made, together with the expense of maintaining the plant in idleness caused by the neglect or refusal of the plaintiff to furnish work continuously according to the terms of the contract.

In other jurisdictions the same rule as to the measure of damages has prevailed.

In Brigham v. Carlisle (Ala.), 56 Am. Rep. 28, CLOPTON, J., delivering the opinion says: "When they (profits) form an elemental constituent of the contract, their loss, the natural result of its breach, and the amount can be estimated with reasonable certainty, such certainty as satisfies the mind of a prudent and impartial person, they are allowed. . . . Profits are not excluded from recovery, because they are profits; but when excluded it is on the ground that there are no criteria by which to estimate the amount with the certainty on which the adjudications of courts and the findings of juries should be based. The amount is not susceptible of proof."

Wakeman v. Wheeler and Wilson Manufacturing Co. (N. Y.), 54 Am. Rep. 676, was an action to recover damages for the breach of a contract by which the defendant company agreed to give the plaintiff the sole agency for every place in Mexico in which he should within a given time sell fifty machines. The plaintiff sold fifty machines or more in several places and, therefore, qualified himself for the agency. It was held that the plaintiff was entitled to recover the profits which he probably could have made; and as showing such profits he could prove that subsequent to the repudiation of the agreement, the defendant established agencies in Mexico, and the number of machines sold by them for the defendant company.

Wells v. National Life Association of Hartford, 53 L. R. A. 33, was an action brought to recover damages for the alleged breach of a contract employing plaintiff as general agent of defendant company for the state of Texas. It was there held by the United States Circuit Court of Appeals that "loss of

anticipated profits may be included in a recovery for breach
of a contract to employ plaintiff on commission as exclusive
general agent of an insurance company for particular territory
during a specified time, which may be estimated by consider-
ing the value of renewals on policies already written not shown
by the company to have lapsed, and the probable future busi-
ness as indicated by that actually done by the company through
their agents after the breach, the respective facilities of the
two for doing the work, the probable expense, and the amount
to be done." There is an extended note to the report of this
case collecting all the authorities on the subject of loss of
profits as an element of damages for breach of contract.

In Griffin v. Colber (N. Y.), 69 Am. Dec. 718, SELDEN, J.,
delivering the opinion says: " Profits which would certainly
have been realized but for the defendant's default are recover-
able ; those which are speculative or contingent are not. . . .
Indeed it is clear that whenever profits are rejected as an item
of damages, it is because they are subject to too many contin-
gencies, and are too dependent upon the fluctuations of markets
and the chances of business to constitute a safe criterion for
an estimate of damages."

In Ætna Life Insurance Co. v. Nexsen (Ind.), 43 Am. Rep.
91 and in Lewis v. Atlas Mutual Life Insurance Co., 61 Mo.
534, it was held that an insurance agent who had been dis-
charged without cause could recover the probable value of re-
newals on policies previously obtained by him upon which
future premiums would, in the usual course of business, be re-
ceived by the company.

In Masterton v. Mayor, etc., of Brooklyn (N. Y.), 42 Am.
Dec. 38, NELSON, C. J., after holding that collateral profits are
too remote to be considered in the measure of damages, says :
" But profits or advantages which are the direct and immediate
fruits of the contract entered into between the parties, stand
upon a different footing. These are part and parcel of the
contract itself, entering into and constituting a portion of its
very elements ; something stipulated for, the right to the en-
joyment of which is just as clear and plain as to the fulfillment
of any other stipulation."

From these authorities, it is clear that damages may be re-
covered for loss of profits caused by a breach of contract ; and

that they are never excluded simply because they are profits. If it reasonably appear that profits would have been made had the terms of the contract been observed, and that their loss necessarily followed its breach, they may be recovered as damages if the evidence is sufficiently certain and definite to warrant the jury in estimating their extent.

An examination of the well-considered cases will show that prospective profits may be recovered for the breach of a contract whenever they are susceptible of proof. They have been rejected by the courts as damages only because of the failure to prove them with sufficient certainty and definiteness. There can be no good reason why they should not be recovered when they are capable of definite estimation. The injured party has the right to demand and receive from the defaulting party full compensation for the loss he has sustained by a breach of the contract. Each party knows the terms of the contract and, therefore, is presumed to know the loss each will sustain by its breach. Hence when either party refuses to observe his agreement he knows the necessary consequence of his act which is to deprive the other party of the value of his bargain, the equivalent of which is the profits he would realize if its terms had been complied with. In such cases, as said in Hitchcock v. Supreme Tent (Mich.), 43 Am. St. Rep. 423, " the profits lost constitute the legitimate measure of damages. The law is not so blind to justice as not to require the defendant to respond in damages, if there is any reasonable basis for their ascertainment." When, therefore, the evidence shows with reasonable certainty the profits which have been lost by the breach of a contract, they should be considered damages recoverable by the injured party from the one in default.

Applying these principles to the case in hand, we think the referee and the learned court below were right in holding that the plaintiff was entitled to recover as damages his commission on the net sales of goods which would have been made by the defendants from April 1, to December 31, 1892, less the losses sustained during the same period. Assuming the contract to have covered that period, the commissions as guarantor to which the plaintiff would have been entitled had the defendants continued their business are susceptible of proof and sufficiently certain and definite to warrant a recovery. As found

by the referee, Minot, Hooper & Co. "took the place of the defendants, accepting transfer from defendants of their accounts, and conducted under their own name the business formerly carried on by the defendants, employing the same manager, using the same store and the same salesmen and clerks, and conforming substantially to the same rules as to giving credit." On the dissolution of the defendants' partnership, the plaintiff transferred to Minot, Hooper & Co. all his goods which a statement prepared by defendants showed to be in their possession. The sales made by that firm under these circumstances are criteria from which can be definitely estimated the sales which the defendants would have made had they continued their business as required by the contract. These are actual sales made under precisely the same conditions as if the defendants had been the firm conducting the business. As found by the referee, the business was carried on for the remainder of the year 1892 in the same store, with the same consignors, with the same manager and with the same clerks and salesmen as it had been prior thereto by the defendants. There is no evidence in the case that would warrant the conclusion that the sales made in the name of Minot, Hooper & Co. during the period in question and the losses sustained were greater or less in number or amount than would have been the sales and losses if defendants had continued the business. On the contrary, the evidence is convincing that the sales and losses would have been practically the same. There is, therefore, no sufficient reason why the sales made and the losses incurred during the remainder of the year 1892, while the business was conducted in the name of Minot, Hooper & Co., should not be taken as the data on which to estimate the commissions or profits due the plaintiff in this action. Such profits are not speculative, imaginary, or uncertain, but are determined by a standard that renders them almost as certain as if the business had been continued by the defendants. The law does not require absolute certainty as to the data upon which profits are to be estimated, but certainty to a reasonable degree or extent so that the damages may rest upon a definite basis and not wholly in speculation and conjecture. If prospective or probable profits are ever to be held as having been sufficiently and certainly proved as a

measure of damages for a breach of contract, then the plaintiff here must be permitted to recover. Any further or greater degree of proof would be, in effect, to exclude all profits as a measure of damages for a violated contract.

The judgment is affirmed.

Mr. Justice Potter, dissenting :

I think the conclusion reached in this case by the majority of the court is based upon a misapprehension of what the contract between the parties really was. It was a contract of insurance by which the plaintiff was to guarantee the defendants against loss by reason of bad debts, upon all sales made by the defendants during the year. The compensation of the plaintiff for insuring against this risk of loss was to be one per cent of the amount of the sales. If the sales were large in volume, the commission would be large in proportion ; if the sales were small, the commission would be reduced accordingly. There was no agreement as to any definite amount of sales or commission, beyond the fact that it was to be limited to one per cent of the amount of those sales, whatever they were. If the defendants had remained in business during the entire year, while their sales might have been greater, yet the risk of loss to be borne by the plaintiff would also have been larger. When the defendants ceased doing business in April, 1892, then, at that instant, the risk of insurance against bad debts which the plaintiff was called upon to bear also came to an end. He was not thereafter called upon to insure the defendants any further against the risk of loss by reason of bad debts, and he therefore necessarily was not in a position from that time on to earn any more commissions, and this for the obvious reason that his commission was limited to one per cent of the actual amount of the sales. When the sales ceased the insurance ceased, and the compensation to be paid for it, as a matter of course, also ceased. The opinion of the majority of the court has apparently taken no account of this fact ; and it permits the plaintiff to recover commissions against the defendants upon a large amount of sales which were never in fact made by them, and as to which plaintiff took no risk of insurance whatever, and upon which he therefore had no right to ask for compensation. The affirmance of this case gives to

the plaintiff something for nothing.   I cannot agree to such a judgment.

Mr. Justice ELKIN concurs in this dissent.