## Samuel, Appellant, *v.* Sota.

*Contract—Set-off—Future profits—Affidavit of defense.*

An affidavit of defense is sufficient to prevent judgment which sets up as a counterclaim a loss of future profits caused by plaintiff's breach of contract, sets forth the contract, the breach thereof, dates, amounts and calculations, and asserts that the claim for the loss of profits was a direct, certain and specific amount resulting from the plaintiff's breach.

Argued Oct. 20, 1909. Appeal, No. 80, Oct. T., 1909, by plaintiff, from order of C. P. No. 4, Phila. Co., Jan. T., 1908, No. 282, discharging rule for judgment for want of a sufficient affidavit of defense in case of Frank Samuel and Silas M. Tomlinson, trading as Frank Samuel, v. Sota and Aznar, trading as Sota & Aznar. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Foreign attachment.

The defendant filed an affidavit of defense which was as follows:

Victor de Ysasi, being duly sworn according to law, deposes and says that he is the duly authorized agent and representative of the United States of the above defendants, Ramon de la Sota and Luis Maria de Aznar, copartners, trading as Sota & Aznar, of London, England, and Bilboa, Spain; that he is familiar with the facts of the above-mentioned suit or claim of Frank Samuel, plaintiff; and that defendants, and each of them, have a full, true and just defense to the whole of plaintiff's claim, of the following nature:

Defendants admit the correctness of plaintiff's two claims of $174, with interest from October 1, 1906, and $602.21, with interest from March 8, 1907, as set forth in plaintiff's statement of claim, and hereby expressly waive proof of the same at the trial of this cause.

As a set-off to plaintiff's said claims and a counterclaim in favor of defendants, deponent alleges that on September 19,

1906, defendants sold to plaintiff 13,000 to 15,000 tons of Chavarri's Garrucha iron ore, tel. quel. (meaning as the ore comes from the mines) at eleven shillings three pence per ton f. o. b. Garrucha, Spain; on a basis of fifty per cent of iron and manganese with three pence scale (meaning that if said ore ran over fifty per cent in iron and manganese, buyer pays seller three pence per unit of such excess, and if ore runs under said fifty per cent seller allows buyer three pence per unit for such deficiency). Shipment of said ore was to be made one cargo in October, one in November and one in December, 1906, steamer to be chartered by sellers in accordance with instructions from buyer and at his expense, and any dispute under the contract to be settled by arbitration in London, as customary. A copy of said contract of sale is hereto attached marked exhibit "A" and made a part of this affidavit.

Chavarri's Garrucha iron ore, the subject of said contract of sale, was known by plaintiff and defendants at the time of the execution of said contract to be iron ore mined by one Chavarri at his mines at Garrucha, Spain, and from him purchased by defendants and by them sold to plaintiff. Defendants had, on June 16, 1906, contracted to buy from said Chavarri's firm Chavarri, Lecoq & Company, 30,000 tons of said Garrucha iron ore at eight shillings five pence per ton f. o. b. Garrucha, with five pence per ton added for loading; the ore to be lifted in approximately equal monthly quantities between July 1, 1906, and February 28, 1907, payment to be made upon delivery of bill of lading. Said 30,000 tons defendants sold to various parties, including plaintiff, selling to plaintiff by said contract of September 19, 1906, approximately the tonnage defendants would be required to lift from said mines in October, November and December, 1906.

During the months of October, November and December, 1906, the time for performance of plaintiff's said contract with defendants, defendants were ready and willing at all times to deliver f. o. b. Garrucha, 13,000 to 15,000 tons of Chavarri's Garrucha iron ore of the character called for by said contract and were ready in all other respects to perform their part of said contract, but plaintiff's instructions to defendants to

charter vessels were at such low rates that no vessel could be obtained, and plaintiff refused and neglected to charter vessels at the prices that were offered to him by defendants, or to charter them elsewhere. During the months of October, November and December, 1906, defendants frequently notified plaintiff that he would be required to lift the ore under his said contract before the expiration of the year 1906, or the mine owners would cancel the tonnage. At plaintiff's request defendants negotiated with the said mine owners to postpone delivery of said ore until January and February, 1907, but plaintiff failed and neglected to charter any vessels during said months and failed to lift or accept any of said ore, although duly requested so to do, and in the month of February, 1907, said mine owners finally canceled 13,000 tons of the aforesaid order for said Garrucha ore and refused to deliver same to defendants.

Said Garrucha ore, according to analysis, contained 43.83 per cent of units of iron and manganese, which, on the aforesaid fifty per cent basis of said contract of September 19, 1906, would have required an allowance by defendants to plaintiff of one shilling six and one-half pence per ton. Defendants would also have been required to pay one and one-half pence per ton as a commission to their representatives in Spain, which, with five pence per ton for loading, would have made the cost to defendants of said ore f. o. b. Garrucha ten shillings six pence per ton. Wherefore defendants have lost as their profit the difference between eleven shillings three pence and ten shillings six pence, or nine pence per ton on 13,000 tons, or $2,379, which they would have made on said contract of September 19, 1906, but for plaintiff's default. In March, 1907, defendants as required by the aforesaid contract promptly requested plaintiff to name arbitrators in London to whom to submit the aforesaid dispute as was customary, but plaintiff refused to submit the same to arbitration.

Wherefore, there is justly due and payable by plaintiff to defendants the sum of $2,379, with interest from February 27, 1907, less the aforesaid credits of $174, with interest from October 1, 1906, and $602.21, with interest from March 8,

1907, for which balance, together with the costs of this action, defendants will demand a certificate in their favor upon the trial of this cause.

*Error assigned* was order discharging rule for judgment for want of a sufficient affidavit of defense.

*Lewis Lawrence Smith,* for appellants.—Generally, in executory contracts of sale of goods, the measure of damages for a refusal to receive the goods contracted for is the difference between the contract price and the market price at the place appointed for delivery, at the date of the breach: Unexcelled Fire-Works Co. v. Polites, 130 Pa. 536; Guillon v. Earnshaw, 169 Pa. 463; Blair v. Ford China Co., 26 Pa. Superior Ct. 374; Saxe v. Lumber Co., 159 N. Y. 371 (54 N. E. Repr. 14).

Where the plaintiff in an action on an executory contract of sale offers no evidence of the market value of the goods at the place of delivery, he does not show that he has suffered any damages at all: Kinports v. Breon, 193 Pa. 309; Jones v. Jennings, 168 Pa. 493; Field v. Schuster, 26 Pa. Superior Ct. 82; Dady v. Condit, 188 Ill. 234 (58 N. E. Repr. 900).

In case of breach of contract, it is the positive duty of the aggrieved person to make reasonable exertions to mitigate the consequences flowing from such breach: Chamberlin v. Morgan, 68 Pa. 168; Taylor v. Read, 4 Paige, 561; Hamilton v. McPherson, 28 N. Y. 72.

In executory contracts of sale in which goods are specific or are of special manufacture, so that at the date of breach there is no general market value, then in many jurisdictions the seller may recover the contract price. These cases are exceptional to the general rule: Ridgeway Dynamo & Engine Co. v. Cement Co., 221 Pa. 160; Field v. Schuster, 26 Pa. Superior Ct. 82.

While in executory contracts of sale, profits are not necessarily excluded because they are profits, yet if allowed at all, it is because the ordinary measure is inadequate or impossible of application, and the profits themselves must have been an integral part of the contract.

The appellee claims that the injured party in a broken contract is entitled to profits. This is not correct. He is entitled to compensation and while he is not debarred from obtaining profits because they are profits, he is on the other hand only entitled to obtain them when the ordinary measure does not provide an adequate and just compensation: Wolcott, Johnson & Co. v. Mount, 36 N. J. L. 262; Fergusson Bros. v. Telegraph Co., 178 Pa. 377; Adams Express Co. v. Egbert, 36 Pa. 360; Howard v. Stillwell, etc., Mfg. Co., 139 U. S. 199 (11 Sup. Ct. Repr. 500); Wilson v. Wernwag, 217 Pa. 82; Williams v. Reynolds, 6 B. & S. 495; Bartlett v. Blanchard, 79 Mass. 429; Thol v. Henderson, L. R. 8 Q. B. Div. 457.

*S. Heckscher,* of *Duane, Morris & Heckscher,* for appellee.— In an action by vendor against vendee, the rule of damages of the difference between the contract price and the market value of the goods at the time of the breach applies only when the goods are in the possession of the vendor, and their market value can thus be realized by him. It has absolutely no application in cases where the goods are not in vendor's possession, as where they have not yet been manufactured by him; or where they have not been mined by him; or where they have not yet been obtained from third persons: Scott v. Coal Co., 89 Pa. 231; Kingman v. Western Mfg. Co., 92 Fed. Repr. 486; Gallagher v. Whitney, 147 Pa. 184; Winslow Bros. Co. v. DuPuy, 208 Pa. 98; Allegheny Valley R. R. Co. v. Steele, 11 W. N. C. 113; Horst v. Roehm, 84 Fed. Repr. 565; Muskegon Curtain-Roll Co. v. Mfg. Co., 135 Pa. 132; River Spinning Co. v. Atlantic Mills, 155 Fed. Repr. 466; Parkins v. Missouri Pac. Ry. Co., 107 N. W. Repr. 260; Danforth v. Walker, 40 Vt. 257.

OPINION BY ORLADY, J., March 3, 1910:

This action of foreign attachment was instituted by the plaintiff to recover a claim, $776.21. The defendants admitted the correctness of the plaintiff's claim, but in their affidavit of defense they present a set-off or counterclaim, which the court below considered sufficient, and discharged a rule taken at plaintiff's instance, for want of a sufficient affidavit

of defense. The appeal was originally taken to the Supreme Court, and was subsequently remanded to this court for consideration. Counsel have presented with exceptional fairness and ability their respective contentions, but the disposition of the question involved is to be determined solely by the sufficiency of the facts set out in the affidavit of defense, and which are to be considered as being true.

The defendants allege that on September 19, 1906, they sold under a written contract to the plaintiff, 13,000 to 15,000 tons of Chavarri's Garrucha iron ore, one of the conditions being, "Shipment of said ore to be made one cargo in October, one in November and one in December, 1906, steamers to be chartered by sellers in accordance with instructions from buyer and at his expense, and any dispute under the contract to be settled by arbitration in London as customary."

The parties were well known to each other as dealers in iron ore, and the subject of sale was known at the time the contract was executed to be of a special grade of iron ore, well known in the trade as mined by one Chavarri at his mines at Garrucha, Spain, and could be secured from no other source.

The affidavit of defense sets out that on June 16, 1906, the defendants had contracted to buy from Chavarri, 30,000 tons of this ore to be lifted in approximately equal monthly quantities, between July 1, 1906, and February 28, 1907, payment to be made upon delivery of bill of lading. Of this ore defendant sold to plaintiff by their contract of September 19, 1906, the tonnage that the defendants would be required to lift from the mines in October, November and December, 1906. During these months the defendants were ready in all respects to perform their part of the contract, but as further alleged in the affidavit of defense, plaintiff's instructions to defendants to charter vessels were at such low rates, that no vessel could be obtained, and the plaintiff refused and neglected to charter vessels at the prices that were offered to him by the defendants or to charter others elsewhere. During the named months, the defendants frequently notified the plaintiff that he would be required to

lift the ore under his contract before the expiration of the year, or the mine owner would cancel his tonnage. At the plaintiff's request the defendants negotiated with the mine owner to postpone the delivery of the ore until January and February, 1907. The plaintiff having failed and neglected to charter any vessels during said months, and having failed to lift or accept any of said ore, although duly requested to do so in the month of February, 1907, the mine owner canceled 13,000 tons of the order, and thereafter refused to deliver it to the defendants, by which the defendants lost their profit which they would have made on said contract of September 19, 1906, but for the plaintiff's default. It is further alleged that in March, 1907, the defendants, as required by the contract, promptly requested the plaintiff to name arbitrators in London, to whom to submit the aforesaid disputes as was customary, but plaintiff refused to submit same to arbitration.

The facts are specifically set forth as to dates, amounts and calculations, the copy of the contract is attached to the affidavit of defense, in which it is directly asserted that the claim for loss of profits was a direct, certain and specific amount due to the plaintiff's breach of contract, to wit, $2,079, as explained in the statement and figures set out at length in the affidavit of defense, and which must be accepted as true. In such a case the rule laid down in 3 Sutherland on Damages (3d ed.), sec. 665, is clearly applicable. The broad general rule in such cases is that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained, and this rule is subject to but two conditions, the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation, and they must be satisfactorily shown by their nature and in respect to the cause from which they proceed. In Wilson v. Wernwag, 217 Pa. 82, after an exhaustive review of the authorities, Judge Mestrezat concludes, "from these authorities it is clear that damages may be recovered for loss of profits caused by breach of contract; and they are never excluded simply because they

are profits. If it reasonably appear that profits would have been made had the terms of the contract been observed, and that their loss necessarily followed its breach, they may be recovered as damages, if the evidence is sufficiently satisfactory and definite to warrant the jury in estimating their extent."

An examination of the well-considered cases will show that prospective profits may be recovered for the breach of a contract, whenever they are susceptible to proof. They have been rejected by the court as damages only because of failure to prove them with sufficient certainty and definiteness. There can be no good reason why they should not be recovered, when they are capable of definite estimation. The injured party has the right to demand and receive from the defaulting party full compensation for the loss he has sustained by breach of the contract. Each party knows the terms of the contract, and therefore is presumed to know the loss each will sustain by its breach. The law is not so blind to justice as not to require the defendant to respond in damages if there is any reasonable basis for their ascertainment. When, therefore, the evidence shows with reasonable certainty the profits which have been lost by the breach of a contract, they shall be considered as damages and shall be recoverable by the injured party from the one in default.

As we are only concerned with the sufficiency of the affidavit of defense, it is needless to pursue the inquiry further. The parties were well known to each other. The damages claimed resulted from the violation of the contract of September 19, 1906, and were not speculative but actual. The calculation on which they were estimated is not challenged. A special tribunal had been selected for the settlement of the dispute, and this the plaintiff refused to follow and the counterclaim is set out with the same clearness and particularity as is required in a statement: Sprissler v. McFetridge, 37 Pa. Superior Ct. 607; see also Horst v. Roehm, 84 Fed. Repr. 565; s. c., 178 U. S. 1; Gallagher v. Whitney, 147 Pa. 184; Winslow Bros. Co. v. Du Puy, 208 Pa. 98.

The judgment is affirmed.