## HEYWARD v. GOLDSMITH.

### In re APOLLO ELECTRIC STEEL CO.

(Circuit Court of Appeals, Third Circuit. January 17, 1921.)

No. 2606.

1. Courts ⬅➡359—Law of state where case arose controls validity of claim against bankrupt.

In determining the validity of a claim against a bankrupt, the law of the state where the case arose must control.

2. Damages ⬅➡40 (2)—Anticipated profits may be recovered on breach of contract in Pennsylvania.

When profits are the direct and immediate fruit of a contract, they may be recovered as damages for the breach thereof in Pennsylvania.

3. Bankruptcy ⬅➡318 (2)—Purchaser held entitled to damages from bankrupt estate for breach of contract.

Where claimant negotiated for the purchase of 6,000 tons of steel ingots, and disclosed his customers when a question arose as to his financial responsibility, and an agreement was entered into directly with the customers for the sale of the ingots for $39 per ton, and the seller agreed to pay claimant the difference between $33 per ton, which he was in the first instance to pay the bankrupt, and $39 per ton, which he was to get from the customer, claimant fully performed, and was entitled to $6 per ton for ingots which seller was unable to deliver by reason of bankruptcy, unless precluded by the terms of the contract.

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. **Bankruptcy ⊙=>318(2)—Contract of sale held not to limit bankrupt's liability.**

Under a contract whereby a steel company, subsequently becoming bankrupt, agreed to pay claimant the difference per ton between the price "actually paid" by claimant's customer and received by the steel company, *held*, that there was no limitation on the liability of the steel company to claimant, but that the language of the contract was intended to limit the liability of the steel company against the possibility of the claimant's customer failing to perform its contract and pay for the steel delivered.

5. **Contracts ⊙=>310—Bankrupt cannot take advantage of own insolvency in contract.**

It must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to become unable to perform the contract.

6. **Bankruptcy ⊙=>318(2)—Adjudication equivalent of breach of executory agreement; "claim founded on a contract."**

Bankruptcy proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement, and a claim for damages by reason of such a breach is founded on a contract, express or implied, within the meaning of Bankruptcy Act, § 63a4 (Comp. St. § 9647), and the damages may be liquidated under section 63b.

7. **Bankruptcy ⊙=>467—Matters of speculation not considered on appeal.**

On appeal from an order affirming an order of a referee disallowing claim in bankruptcy, a decision that claimant should not be allowed a certain specified amount per ton for steel ingots sold by bankrupt, where bankrupt failed to deliver, because molds to be furnished by claimant would be impaired, cannot be considered, where there is no testimony as to the extent of the impairment, and any impairment which the molds might have suffered is speculative.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

In the matter of the bankruptcy of the Apollo Electric Steel Company; J. J. Goldsmith, trustee. From an order affirming an order of the referee disallowing his claim, Thomas Heyward, Jr., appeals. Order reversed, with direction to allow claim.

Ulysses G. Vogan and Charles F. Patterson, both of Pittsburgh, Pa., for appellant.

Edwin B. Goldsmith, of Pittsburgh, Pa., and Frank R. S. Kaplan, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal by Thomas R. Heyward, Jr., from the District Court for the Western District of Pennsylvania, affirming an order of the referee disallowing his claim in bankruptcy. Heyward was negotiating with the bankrupt for the purchase of 6,000 tons of open hearth steel ingots. Some question arose as to his financial responsibility, whereupon he disclosed his customers, the receivers of the Central Iron & Steel Company, of Harrisburg, Pa., to the bankrupt, which, with the consent of Hayward, entered into an agreement with them directly for the sale of said ingots for $39 per gross ton, and also entered into an agreement with Heyward whereby it

⊙=>For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

agreed to pay Heyward $6 per ton, the difference between $33 per ton, which he in the first instance was to pay the bankrupt, and $39 per ton, which he was to get from the receivers.

The Apollo Electric Steel Company supplied, under the contract, ingots to the amount of 4,697 tons, leaving a balance of 1,303 tons, which it failed to furnish and deliver. The Apollo Electric Steel Company then became bankrupt, and Heyward filed his claim with the trustee in bankruptcy for $6 per ton on 1,303 tons, amounting to $7,818. The receivers of the Central Iron & Steel Company went into the open market and purchased 1,303 tons at a higher price than it was to pay the bankrupt, and filed its claim with the trustee in bankruptcy for the difference. This claim was allowed, but the claim of Heyward was disallowed, by the referee, and the District Court affirmed the referee's order. The case is here on appeal.

The referee held that the claimant was entitled to be compensated for his actual loss, which was measured by his actual expense in securing the contract for the sale of the ingots and in furnishing the molds, in accordance with the terms of the contract, together with reasonable compensation for his services therein. If the expenses thus incurred and the compensation due him for said services should exceed the amount which he had already received under the contract, this excess constitutes, in his opinion, Heyward's actual loss, for which his claim should be liquidated and allowed. If, however, what he had received equaled or exceeded said loss, he was not damaged, but disappointed, and in such case his claim resolves itself into the loss of anticipated profits, which may not be allowed.

The referee further held that the claim must be disallowed by reason of the terms of the contract between bankrupt and claimant, which, inter alia, provides that:

"The Apollo Electric Steel Company agrees to pay the said Thomas R. Heyward, Jr., the difference per ton between the price actually paid by said receivers and received by said Apollo Electric Company for said steel, under the terms of said contract, and the sum of thirty-three dollars ($33.00) per gross ton net."

In addition to the reasons contained in the opinion of the referee for disallowing the claim, the judge of the lower court added another, namely, the $6 per ton claimed by Heyward on every undelivered ton does not adequately express the amount of his loss, for the reason that the molds furnished by him under the contract would have been impaired in value in the manufacture of the 1,303 tons which the Apollo Electric Steel Company did not furnish, and therefore he did not lose that impairment.

[1, 2] This case arose in Pennsylvania, and must be controlled by the decisions of the courts of that state. If the $6 per ton claimed by Heyward be considered as anticipated profits, which seems to be the theory on which the claim was treated below, the decisions of the highest court of Pennsylvania abundantly support the proposition that, when profits are the direct and immediate fruit of the contract, they may be recovered as damages for the breach thereof. Imperial Coal Co. v. Port Royal Coal Co., 138 Pa. 45, 20 Atl. 937; Gallagher v.

Whitney, 147 Pa. 184, 23 Atl. 560; Puritan Coke Co. v. Clark, 204 Pa. 556, 54 Atl. 350; Wilson v. Wernwag, 217 Pa. 82, 66 Atl. 242, 10 Ann. Cas. 649; In re Duquesne Incandescent Light Co. (D. C.) 176 Fed. 785, and the cases there cited. This is the rule in the United States Supreme Court also. United States v. Behan, 110 U. S. 338, 4 Sup. Ct. 81, 28 L. Ed. 168; Hinckley v. Pittsburgh Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967. If the amount in question be considered as profits, they were the direct and immediate fruit of the contract, and the claim on this theory should have been allowed.

[3] This claim, in our opinion, does not represent profits at all, but consideration. It was the full consideration which Heyward was to receive for performing the contract. The evidence shows that he fully performed, and is entitled to the consideration, unless precluded by the terms of the contract.

[4] The referee found that Heyward, having actually performed his part of the contract, had a right to the allowance of his claim to an amount sufficient to cover his actual loss, as above indicated, because of the failure of the bankrupt to perform its part of the contract, unless such allowance is precluded by the provision of the contract above quoted. The language of the contract, "actually paid by said receivers and received by said Apollo Electric Steel Company," he held, was "intended to limit the liability of the bankrupt to claimant, and the ingots actually delivered and paid for, as a protection against the possibility of the Central Steel Company failing to perform its contract and pay for all the steel delivered." This interpretation, we think, is exactly right. The Central Iron & Steel Company was in financial straits and was being operated by receivers. It was both natural and wise for the bankrupt to protect itself against liability to Heyward upon the failure of the receivers of the Central Iron & Steel Company to perform its contract in taking all of the ingots contracted for, or in not paying for those taken. The language did not contemplate the failure of the Apollo Electric Steel Company, and the trustee cannot take advantage of its failure.

[5, 6] In disallowing the claim, the referee lost sight of this construction of the provision, and treated it as though its purpose was to protect the Apollo Electric Steel Company against its own inability to perform. This was not its purpose. The bankrupt could not take advantage of its own insolvency, and the trustee may not hide behind the bankruptcy of the nonperforming company, and avail himself of a defense not open to it. It must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to become unable to perform the contract. Bankruptcy proceedings are but the natural and legal consequence of something done or omitted to be done by the bankrupt in violation of his engagement in the contract, and bankruptcy proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executionary agreement. The claim for damages by reason of such a breach is founded upon a contract, express or implied, within the meaning of section 63a4 of the Bankruptcy Act of 1898 (Comp. St. § 9647), and the dam-

ages may be liquidated under section 63b. Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 Sup. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580. There was an obligation on the part of the bankrupt to perform the contract with the Central Iron & Steel Company, which was made a part of the contract between the bankrupt and claimant. Since the claimant had fully performed, and was entitled to the consideration, the claim should have been liquidated and allowed.

[7] There is no testimony as to the extent of the impairment of the molds, which their use in manufacturing the ingots would have caused. In the absence of such testimony, any impairment which they might have suffered is speculative, and may not be considered by us.

The order of the lower court and the referee will be reversed, with direction to allow the claim.