## Vakos *v.* Hoff and Witmer, Appellants, et al.

Argued November 18, 1942.

Before KELLER, P. J., CUNNINGHAM, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

George B. Johnson, for appellants.

Samuel Lichtenfeld, for appellees.

OPINION BY KELLER, P. J., January 28, 1943:

This proceeding originated in a bill in equity filed on January 31, 1940, by the plaintiffs, Peter Vakos and Steve Vakos, against the appellants, H. Jay Hoff and I. M. Witmer, and also against Harry R. England, Jr., Paul England, Margaret K. England, Harold England, Samuel J. England, and Thomas S. Holt, as co-defendants, to restrain the defendants from interfering with the plaintiffs' use and possession of a storeroom on the first floor of a building located on South Third Street, Oxford, Pennsylvania, which had been leased to them by the England defendants for a term which did not expire until October 1, 1940. The suit was transferred to the law side of the court on April 8, 1940 without designating whether the action was to be in assumpsit or trespass; but on January 6, 1941 it was fixed as an action of trespass for damages for unlawful eviction, and resulted in a verdict against Hoff and Witmer jointly for $2500, on which judgment was entered. They appealed to the Supreme Court, which remitted the appeal to this court: Sharp v. Keiser, 292 Pa. 142, 140 A. 772.

The record of the case is confused, much having been taken for granted on the trial, but the underlying facts may be stated as follows:

Harry R. England was the owner of the building in which the storeroom abovementioned was located. On

April 11, 1916 he gave the Chester County Trust Company his bond for $8500, secured by a first mortgage for that amount on said building and the lot of ground appurtenant. This mortgage was assigned on September 2, 1936 (recorded September 8, 1936) to the defendant, Thomas S. Holt, who was an uncle of the England defendants.

On December 18, 1929 the said Harry R. England executed and delivered to his five children, named as defendants above, a second mortgage on said premises in the amount of $14,582.40. On September 1, 1932 this mortgage was foreclosed and the property was sold at sheriff's sale to the mortgagees, the England children, and a sheriff's deed was delivered to them. This sale had no effect on the first mortgage.

On September 6, 1935, Paul England and Samuel J. England, acting for themselves and as agents for the other England children [1]—the owners—entered into a written lease for said storeroom with William J. Fekas, Nick J. Bebas and Arthur Dixon, for use as a restaurant, for the term of one year from October 1, 1935, with the added provision *written* into the printed form, "It is hereby agreed that the lessees shall have the privilege of remaining for four years after the expiration of this lease." This was rightly construed as effecting a lease for a term of four additional years if the lessees elected to remain in possession after the expiration of the one year term of the lease; which they did.

On June 2, 1936, Dixon assigned his interest in the

---

[1] In preparing the lease, the scrivener erroneously named the lessors as, "Paul England and Samuel J. England, agents for Harry J. England"; but the England children in the pleadings formally recognized the validity of the lease as against them as owners, and Samuel J. England testified on the trial that he and his brother Paul were authorized by the other children to act as their agents in making the lease.

lease to the other two lessees and on December 17, 1936 they assigned the lease to Peter Vakos and Steve Vakos, the plaintiffs, "Paul and Samuel J. England, Agents, Lessors" approved and agreed to this assignment, in writing, on the back of the lease. This waived the clause in the lease prohibiting its assignment.

Harry R. England died before the present litigation arose. On October 20, 1936, his children, the owners of the mortgaged premises, executed and delivered to Holt, the holder of the first mortgage, their judgment bond in the penal sum of $8000, conditioned for the payment of $4000 in one year, on which judgment was entered against them on February 5, 1940 in Judgment Docket C-4, page 122. It was stated at the oral argument that this bond was given as collateral security for the said first mortgage.

Sometime thereafter—the exact date does not appear —the England children agreed in writing to sell and convey the said premises to H. Jay Hoff, abovenamed defendant, subject to said first mortgage.

On November 30, 1939 a paper signed by Samuel J. England, Agent, was served on the plaintiffs, notifying them to vacate the premises, held by them under said lease, "at the expiration of [their] current term, towit on the 1st day of January 1940". There was no legal warrant or authority for this notice. The lease did not expire until October 1, 1940, and the notice to quit had no effect on the lease or on the plaintiffs' possession under it.

On December 4, 1939 Margaret England, one of said 'England children', who owned said real estate, died intestate and unmarried, owning an undivided one-fifth interest in said real estate, which passed to her surviving brothers, as her heirs.

During the month of December 1939 Hoff twice asked the plaintiffs to vacate said storeroom on January 1, 1940. They agreed to do so if paid a consideration of

$3500, which Hoff refused. Plaintiffs paid Samuel England, as agent for the owners, the rent as it fell due up to and including December, 1939; but the latter refused to accept the rent for January 1940, and returned a check which they had sent him. He also refused to accept the subsequent rent.

On December 28, 1939 the England children delivered to Hoff a deed for said real estate subject to said first mortgage. Unpaid taxes, amounting to $1434, were a charge on the land, and the sale was, of course, subject to the lease which did not expire until October 1, 1940.

On January 29, 1940, the defendant, I. M. Witmer, a contractor employed by Hoff, and at his instance, started to raze the building, tearing down partitions and taking out windows on the second and third floors; he took off the roof in the rear and started to tear up the floor above the restaurant. His actions rendered the leased premises untenantable.

The plaintiffs then filed the bill in equity referred to in the beginning of this opinion. On January 31, 1940 a summons in ejectment was issued by Thomas S. Holt, to the use of H. J. Hoff, v. Peter Vakos to obtain possession of the leased premises, which was quashed on February 20, 1940, for failure to file the affidavit required to accompany the praecipe.

On February 5, 1940 execution was issued on the judgment entered in Judgment Docket C-4, page 122, as aforesaid, to No. 1 February Term, 1940,[2] on the col-

---

[2] The court below in its opinion assumed that this execution was upon the original judgment bond given by the mortgagor, Harry R. England. But counsel for both parties agreed at the oral argument that the execution was on the collateral bond given to Holt by the mortgagor's children—who were then the owners of the real estate—after Holt took an assignment of the mortgage. An examination of the record of the judgment and the fi. fa. thereon, confirms this.

lateral bond given by the England children to Holt, and on February 29, 1940 the real estate was sold to Holt for $1. On March 6, 1940 a deed from the sheriff was delivered to Holt, and he, in turn, on March 19, 1940 conveyed the real estate to Hoff, subject to the lien of said first mortgage.

On March 9, 1940 the plaintiffs were obliged to leave the leased premises by reason of its untenantable condition, due to the actions of Hoff and Witmer.

On July 23, 1940 a quit-claim deed from Holt and the England children, was executed and delivered to Hoff. This was likewise ineffective to discharge plaintiffs' lease.

It will be noticed that the defendants, Hoff and Witmer, began their unlawful and unwarranted interference with the plaintiffs' occupancy and possession of the leased premises on January 29, 1940, when they were without any color of authority to disturb the plaintiffs in their possession.

Nor did the sheriff's sale of February 29, 1940, the purchase of the property thereunder by Holt, and its conveyance by him to Hoff, have any effect on the lease, or justify the eviction of the plaintiffs.

Had the execution been issued on the original judgment bond, to secure which the mortgage was given, and the sheriff's sale been had on it, the sale would have related back to the date of recording the mortgage and discharged it (*Keene Home v. Startzell*, 235 Pa. 110, 83 A. 584), and the purchaser would have taken the property free of the mortgage and discharged of the lease, which had been entered into subsequent to the mortgage; and proceedings to secure possession under the Act of April 20, 1905, P. L. 239, could have been begun. But the execution was upon the judgment on the collateral bond given the assignee of the mortgage after the mortgagor's children became the owners of the real estate, and the sale on this judgment did not

discharge the mortgage nor pass the property free and discharged of the lease. The lease was not affected by the sheriff's sale, and that sale had no effect whatever on the illegal eviction of the plaintiffs, either by way of mitigation of the damages sustained because of such eviction, or otherwise.

The record fails to show that Thomas S. Holt, assignee and holder of the first mortgage on the premises, ever peaceably entered and took possession of the storeroom leased by the England children to Fekas et al., and by them assigned to the plaintiffs. As holder of a mortgage antedating the lease, he had a right (1) to obtain peaceable possession of the leased premises if he could do so, or (2) to bring his action of ejectment against the tenants and obtain a judgment of quod recuperet, to be followed by a writ of habere facias possessionem; or (3) he could issue a sci. fa. on his mortgage, obtain judgment and then issue a writ of levari facias on the judgment, and buy in the property, and institute dispossession proceedings under the Act of 1905, supra; but there is no competent evidence in the record that he proceeded in any of these ways. Consequently the eviction of the plaintiffs was unlawful.

The only remaining matter is the question of damages. On this point plaintiffs produced evidence, which if believed, would justify the verdict. See *Fehl v. Pfaeffle,* 80 Pa. Superior Ct. 447; *Wilson v. Wernwag,* 217 Pa. 82, 66 A. 242. The court below did not deem it excessive. In view of the manner in which appellants, without any color of right, violated the plaintiffs' rights of occupancy and possession, we are not disposed to be too critical in passing on the amount of damages as determined by the jury. The judge's charge restricted plaintiffs to compensatory damages. A defendant who has high-handedly violated the legal rights of another cannot escape the full consequences

of his act merely by testifying that he believed he had a right to do as he did, unless his belief is shown to have been founded on some substantial basis of fact. But the court instructed the jury that plaintiffs were not entitled to punitive damages and they have not appealed.

The assignments of error are overruled and the judgment is affirmed.