ERLING PLATOU, Administrator of the Estate of L. S. Platou, Deceased, Respondent, v. JOHN SWANTON, as Administrator of the Estate of V. W. Parker, Deceased, Appellant.

(230 N. W. 725.)

Opinion filed April 24, 1930.

*Lawrence, Murphy, Fuller & Powers* and *B. F. Spalding,* for appellant.

*Lemke & Weaver,* for respondent.

BIRDZELL, J.  In April, 1926, L. S. Platou leased from the owner, James Grady, for a term of five years at $50.00 per month, three rooms on the second floor of a building known as the Equity Building in the city of Fargo.  There were one or two additional tenants occupying office space on the second floor and some tenants occupying store rooms or office space on the first floor.  Otherwise, the building, a five-story structure, was used principally for apartments.  In the spring of 1928 Grady leased the entire building, subject to existing leases, to one V. W. Parker, who succeeded to Grady's interests under the outstanding leases.  In June, 1928, Parker undertook to remodel the building to some extent preparatory to using it as a hotel.  The work of remodeling and redecorating was started about the 8th of June and the building was opened as a hotel on the 15th of August, 1928.  Platou was a medical doctor and he sublet one of the rooms covered by his lease to a dentist, one Heller.  It seems that the main entrance through which those desiring to call at the office of Dr. Platou would enter the building was on Roberts Street.  One thus entering the building would walk to an elevator, or to a stairway alongside the elevator, thence to the second floor and some distance down a hallway before reaching the doctor's office.  Both Doctors Platou and Heller had for some time

maintained signs suspended from a rod at the street entrance of the building, but not on the outer wall of that portion covered by the Platou lease. These signs were taken down by or under the direction of Parker. Awnings also had been maintained on the west windows of the offices of Doctors Platou and Heller, and these were likewise taken down at the direction of Parker. These did not belong to the lessees. During the work of putting the building in condition for use as a hotel there was more or less interference with elevator service and with ingress to and egress from the doctors' offices on account of plaster and rubbish incident to alterations that were made. In July, 1928, Platou brought the instant action against Grady and Parker to recover damages for the removal of the sign, for actual trespass committed by plumbers working under the direction of Parker, for discontinuance of elevator service, for removal of awnings, and for rendering the halls impassable; also, for damages to the business of the plaintiff through loss of clientele caused by inability to gain access to the plaintiff's office or, owing to the absence of the sign, to know its location. The cause was tried in the district court of Cass county resulting in a verdict for the plaintiff in the sum of $600.00. The complaint shows that injunctive relief was sought, but inasmuch as the only issues tried were tried to a jury and relate only to the damages sustained, we shall assume that the right to equitable relief is waived. The case was dismissed as to the defendant Grady and since the trial both the plaintiff and the remaining defendant have died. From a judgment upon the verdict and for costs, Parker's administrator appeals.

Evidence was introduced, over objection, for the purpose of proving the damages alleged in the complaint, and the court instructed the jury on all the items claimed, to which rulings and instructions exceptions were taken. Concerning the signs the court, in instructing the jury, said: "Now, I think the first claim here made by the plaintiff is that the defendant, Parker, removed certain signs bearing the names, one, Dr. L. S. Platou, and the other, Dr. Heller. The evidence, I think, shows that those signs had been there for some time, probably, before Mr. Parker took over the premises. The evidence also shows, I think, that Mr. Parker was instrumental in having the signs removed, for purposes, as you have heard here, from the testimony. Now, I think I can say to you, under the circumstances and the facts in this

case, that those signs were lawfully there, since they had been there for some time."

The burden of proving that the sign was lawfully there was upon the plaintiff; but even assuming that proof that the sign had been there for a considerable period of time would justify the inference that it was lawfully there, still, before substantial damages may be recovered for its removal it should be made to appear that the plaintiff had a right to maintain it in its existing location throughout some period of time. It might have been lawfully there though the plaintiff had but a revocable license and one that might have been revoked concurrently with the removal. If such were the case the plaintiff sustained no damage.

It is suggested in the respondent's brief that the sign was located on the outer wall of that portion of the building which had been leased to the Amerland Land Company and that if this lessee were satisfied to permit the sign to remain there Parker had no right to remove it. The evidence does not show that the plaintiff had derived any such right from the Amerland Company, but even if he had the evidence further shows that the Amerland Company at the time the alterations were made in the building vacated the space it had previously occupied and moved to another part of the building. In this state of the record the jury could scarcely infer that the interference with any license which might have been obtained from the Amerland Company was more than a temporary interference. Hence, in so far as the instruction given permitted the jury to award damages based upon an interference for the remainder of the plaintiff's lease, it is clearly erroneous if the right of the plaintiff is derived from the Amerland Company or if it rests upon a revocable license.

A tenant in possession is entitled to use the outside walls of that portion of a building leased by him and may place advertising signs thereon, in the absence of a restrictive provision in the lease, where by so doing he does no injury to the freehold, and such lessee may license another to make similar use of the walls. 36 C. J. § 713. The right of the tenant of that portion of the building upon which the sign was hung is well defined in the case of Lowell v. Strahan, 145 Mass. 1, 1 Am. St. Rep. 422, 12 N. E. 401. There a ground floor tenant had allowed others for a consideration a right to place advertising

signs upon the outside walls of that portion of the building leased. The lessor claimed the privilege given violated a stipulation in the lease against subletting and also claimed the right to recover from the tenant what he had received as consideration for the privilege. In denying both contentions of the lessor the court, among other things, said (page 8 of 145 Mass.): "That the outside of the front wall would be valuable to the lessee as part of the premises, and that the lease gives him the right to use it for some purposes, such as putting out signs and displaying goods, is not disputed; but it is contended that the right is a privilege or easement appurtenant to the leased premises in a part of the building, not parcel of them. The defendant contends, on the other hand, that the outside of the front wall is parcel of the leased premises. . . . It is plain that the lease grants not merely an interest in the walls, like the incidental right of support or shelter which it grants in the land and other parts of the house, but the right to use and enjoy, as leased premises, for the purposes of business. That right is exclusive. The landlord has no right to use or to let it for such purposes. . . . We can see nothing in the nature of the estate granted, therefore, that should prevent the outer wall being included as parcel of the demised premises. . . . It is contended that the agreement of the defendant to allow the sign of a stranger, in consideration of an annual payment by him, to remain upon the outside wall demised, was a breach of the covenant in the lease not to underlet any part of the premises. But this was a license, and not a lease. It was permission to do a particular act, namely, to affix a sign to the wall, and gave no authority to do any other act upon the premises. The fact that the permission was paid for, and that the act permitted was a continuing one, are ordinary elements of a license. Every license to do an act upon land involves the exclusive occupation of the land by the licensee, so far as is necessary to do the act, and no further."

See also Miller v. FitzGerald Dry Goods Co. 62 Neb. 270, 86 N. W. 1078; Riddle v. Littlefield, 53 N. H. 503, 16 Am. Rep. 388; Salinger v. North American Woolen Mills, 39 L.R.A.(N.S.) 350 and note, 70 W. Va. 151, 73 S. E. 312; Jones, Land. & T. § 40; 1 Underhill, Land. & T. § 277; 1 Wood, Land. & T. 2d ed. § 208.

The plaintiff's lease is in evidence. It covers the second floor space

hereinabove referred to "with the privileges and appurtenances." It does not refer specifically to any space for advertising purposes and the evidence does not show what provision was made, if any, at or near the entrance to the building for the accommodation of the tenants in this respect. See Snyder v. Hersberg, 11 Phila. 200. Without express provision in the lease and without evidence showing the practical necessity for a sign placed as was the sign of the plaintiff, and in the absence of proof that common advertising privileges were afforded to the tenants at the common entrance, the right to maintain such an individual sign as the one in question would not exist either by virtue of express contract or as an appurtenance to the lease.

With respect to the awnings there was evidence that their removal rendered the offices unpleasant on account of exposure to the sun during the hot summer months. There was no evidence that the plaintiff owned the awnings or that he had any right to call upon the owner or lessee of the building to provide them. The evidence further shows that they were old and possibly no longer in keeping with the building, yet the court instructed that the jury might assess damages on account of their removal, saying "if you allow any damages by reason thereof, you would have,to base it upon something that you can say, from the evidence, measures the damage. You have heard the evidence, and it is not for the court to review the evidence for you." There was no evidence under which any damages could have been assessed on account of the removal of the awnings and the jury should have been so instructed.

With respect to the interruption of elevator service and the obstruction of the passageway leading to the plaintiff's office, there was evidence tending to show a violation of the plaintiff's rights under his lease, but the court properly instructed the jury that this did not amount to an eviction. This is particularly true in view of the fact that the plaintiff remained in possession of his offices paying rent for several months after the repairs and alterations were completed. While evidence was admitted that the rental under the lease was $50.00 a month and that the offices were worth $90.00, the trial court ruled that the value of the lease to the end of the period could not be recovered, as there had been no eviction. But additional evidence was admitted, over appropriate objection, apparently for the purpose of

proving damages, to the effect that the plaintiff's income was much less during the year 1928 in question than in the previous year of 1927. He showed an income from his practice during 1927 of $12,-000.00 and that his practice fell off materially during the three months the alterations were in progress. In answer to the specific question as to how much, the plaintiff testified: "Well, I would say it fell off, oh, from six to seven hundred dollars a month."

Ordinarily, the measure of damages for a breach of a covenant of quiet enjoyment is the difference between the value of the use of the property and the rent reserved. Tiffany, Land. & T. § 79g; 62 A.L.R. 1318, note. An analogous general rule is contained in the civil code (Comp. Laws 1913, § 7149), providing the measure of damages "deemed to be" sustained upon a breach of a warranty or covenant of quiet enjoyment, but this provision has been construed as subject to the same variations as the common law rule existing prior to the enactment of the statute. Bowne v. Wolcott, 1 N. D. 415, 421, 48 N. W. 336. Where it is impossible to measure the loss by the application of the general rule and where the proof is such that the court can say loss of profits was within the contemplation of the parties at the time the contract was made, the damages may properly be measured by the loss of profits. Blaustein v. Pincus, 47 Mont. 202, 131 Pac. 1064, Ann. Cas. 1915C, 405; Schneider v. Reeves, 98 Neb. 629, 154 N. W. 210; Matzger v. Arcade Bldg. & Realty Co. 102 Wash. 423, 173 Pac. 47. Assuming that damages may be recovered in the instant case for a disturbance of the plaintiff's quiet enjoyment which does not amount to an eviction (See 1 Tiffany, Land. & T. § 79d; 2 Underhill, Land. & T. § 428), we are of the opinion that such damages would not necessarily be limited to the difference between the value of the use of the property as furnished by the landlord during the period of disturbance and the rent reserved. It might well have been within the contemplation of the parties at the time the lease was made that any serious disturbance affecting facilities for ingress and egress of the clientele of the plaintiff's office would affect his income to a much greater extent than would be reflected by any relation between the rental and an impaired use of the premises.

Where lost profits are recoverable, however, the amount must not be left to speculation or conjecture. The testimony must show with

a fair degree of certainty not only the diminution of income or profit but that it is fairly attributable to the wrong complained of. Matzger v. Arcade Bldg. & Realty Co. 102 Wash. 423, 173 Pac. 47, supra; 17 C. J. 757–760, 786. A careful examination of the record in the instant case leads us to the conclusion that the diminution of income testified to was not shown to have resulted from any breach of the defendant's obligations to the plaintiff with the degree of certainty which the law requires. The plaintiff should have been required to establish with a greater degree of certainty than he did the responsibility of the defendant for the loss complained of. As the record stands this element of damage is too speculative.

For the errors noted the judgment must be reversed and a new trial granted. It is so ordered.

BURKE, Ch. J., and NUESSLE, BURR, and CHRISTIANSON, JJ., concur.