## Guady *v.* Seaman, Appellant.

Argued November 17, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

*James G. Moore*, for appellant.

*James W. Mack, Jr.*, with him *Vasil Fisanick*, for appellees.

OPINION BY HIRT, J., March 18, 1959:

The plaintiffs had bought a licensed restaurant at Alverda in Pine Township, Indiana County. They operated the business there for 8½ months until the end of the term of their lease when they were obliged to surrender the premises. In anticipation of moving to

a new location they negotiated a lease of a building owned by the defendant, in the same township, for a term of two years from September 15, 1952. The use to be made of the premises as recited in the lease was the conduct of a "restaurant with liquor license", and the plaintiffs secured a transfer of the license to the new location. In consideration of the rents reserved, which the plaintiffs agreed to pay under the terms of the lease, it was agreed: "Lessor shall furnish water for the leased premises." A dependable and adequate water supply was essential to the lawful conduct of the plaintiffs' business and that fact was within the contemplation of the parties when the lease was entered into. In adapting the building to the conduct of a restaurant business, the plaintiffs repainted the rooms on the first floor of the building; they made changes in the plumbing; they rewired the premises and incurred the expense of installing a compressor and other appliances necessary to the conduct of the business. The plaintiffs opened for business on October 3, 1952 and up to that date there was an adequate water supply from a well on the premises. Two or three days later the defendant completely cut off the water supply to the building by removing the electrically driven pump from the well. Since then, in spite of the plaintiffs' demands that he comply with his obligation, the defendant has refused to furnish water as he was bound to do under his lease agreement. Plaintiffs carried water to the restaurant from another source for about two weeks and then closed the business because of the defendant's default. They removed from the premises and it was not until 1954 that they were able to lease a suitable building to reopen their restaurant at a new location.

This action was brought to recover damages from the defendant resulting from breach of his agreement to provide a water supply to the demised premises. The

principal element of damage was plaintiffs' loss of profits, during the period within the term of their lease, when defendant by his default made it impossible for them to operate their restaurant. At the trial plaintiffs were permitted to prove their loss by the expert testimony of a well qualified public accountant who was familiar with plaintiffs' business, from having served them in making up their tax returns. From plaintiffs' books, showing the returns from the business at Alverda and from the few days of operation on defendant's property, as well as the books of account of the business after plaintiffs reopened their restaurant at their present location, the witness testified that in his opinion plaintiffs' damage measured by loss of profits was $3,387. The jury found for the plaintiffs in the sum of $2,000.

We are unable to find merit in appellant's contention that the court erred in admitting this evidence, over his objection. "Damages are recoverable for losses caused or for profits and other gains prevented by the breach [of a contract] only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty": Restatement, Contracts, §331. In Comment (a) under §331, it is said: "In these cases the defendant usually has reason to foresee this difficulty of proof and should not be allowed to profit by it. In such cases, it is reasonable to require a lesser degree of certainty as to the amount of loss, leaving a greater degree of discretion to the jury, subject to the usual supervisory power of the court." Our Supreme Court in *Western Show Co., Inc. v. Mix,* 308 Pa. 215, 223, 162 A. 667, and in a second appeal, 315 Pa. 139, 142, 173 A. 183, adopted the above principle of the Restatement and, in its application, in effect held that expert testimony is admissible to prove the damages which a plaintiff has suffered by reason of a de-

fendant's breach of his contract, where the witnesses are qualified and there is no other reasonably safe basis for measuring the loss. In *Hendler v. Quigley*, 38 Pa. Superior Ct. 39 (which has much in common with the present case), we said: "In a proper case there is no legal obstacle to the recovery, as damages, of lost profits. The difficulty usually arises in the application to such matters of established rules of evidence. Where sufficient evidence is offered to remove such a question from the domain of the speculative and fanciful to that of the actual and ascertainable, a recovery may be had. In Wilson v. Wernwag, 217 Pa. 82, Mr. Justice MES-TREZAT, after an exhaustive review of the cases, thus lays down the principle: 'From these authorities, it is clear that damges may be recovered for loss of profits caused by a breach of contract; and that they are never excluded simply because they are profits. If it reasonably appear that profits would have been made had the terms of the contract been observed, and that their loss necessarily followed its breach, they may be recovered as damages if the evidence is sufficiently certain and definite to warrant the jury in estimating their extent . . . The law does not require absolute certainty as to the data upon which profits are to be estimated, but certainty to a reasonable degree or extent so that the damages may rest upon a definite basis and not wholly in speculation and conjecture' ".

The three locations where the plaintiffs operated their restaurant were within 1½ miles of each other. It was a fair inference for the jury that they all accommodated the same class of patrons in the township. There were proper books of account and the plaintiffs called a qualified expert witness to interpret them. The fact that the jury's verdict was for much less than the amount of lost profits as computed by the witness does not militate against the admissibility of this evidence.

480

On the contrary the moderate verdict reflects an estimate of the weight which the jury under the careful charge of the trial judge, ascribed to this testimony in the light of the principle that opinion evidence, at best, is unsatisfactory in character. *Dawson v. Pittsburgh*, 159 Pa. 317, 325, 28 A. 171.

So also there is no merit in the second contention of appellant that the court erred in the extent to which it permitted the cross-examination of the defendant, to attack his credibility. Appellant's direct testimony in his defense, raised a strong suspicion that he was not telling the truth, and plaintiffs' cross-examination of him made certain of it; his testimony was thoroughly impeached. He was seriously damaged in fact but not in law. The extent to which a witness may be cross-examined to test his credibility rests in the sound discretion of the trial court. *Kaplan et al. v. Loev*, 327 Pa. 465, 469, 194 A. 653. There was no abuse of discretion in any degree, chargeable to the court in the scope of the cross-examination allowed by the trial judge.

Judgment affirmed.