## Lott *v.* Guiden, Appellant.

520

Argued April 14, 1965.   Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Charles G. Notari,* for appellant.

*Edward A. Craig, III,* with him *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for appellee.

OPINION BY JACOBS, J., June 17, 1965:

Defendant appeals from the entry of a judgment against him for rentals under a written lease of real estate. The lower court directed a verdict for the plaintiff in the amount of $3,128.77 and denied defendant's motion for a new trial.

Defendant rented a storeroom in the Park View Shopping Center, Mt. Lebanon Township, Allegheny County, at $175 per month for use as a pickup station for his laundry and dry cleaning business. The ten year lease began on March 1, 1958, and included the following clause regarding parking facilities:

"Lessor gives and grants unto the Lessee an easement in all that land that may from time to time be set aside for side walks and for ingress and egress to and from the leased premises above and for free parking, the same to be used and enjoyed by the Lessee, the Lessee's invitees, customers and the general public, but subject to the same right to be enjoyed by other lessees and occupants of Lessor's premises. The Lessor shall pave, arrange and maintain those walks and blacktop, arrange and maintain those parking areas in the vicinity of and adjacent to Lessee's premises. The said walks and parking areas shall remain under Lessor's control and not be fenced or otherwise obstructed and shall be kept open for the free use thereof as herein intended."

When the lease was entered into with defendant on February 25, 1957, two parking spaces were marked on the ground directly in front of defendant's storeroom but the shopping center plot plan, signed by the defendant on the same day, nowhere indicated that parking spaces were to be provided directly in front of the store.

On May 8, 1958, the plaintiff-lessor made an assignment of this and other leases to New England Mutual Life Insurance Company as collateral security for a loan. This assignment provided that the plaintiff had the right to all rents, income and profits arising under the lease so long as there was no default in the plaintiff's payments on the loan, and further provided that the assignee might take possession and collect the rents, income and profits if there was such default.

Defendant received a copy of this assignment on May 15, 1958, with a letter telling him to continue making rent payments to plaintiff until otherwise notified. He did so and plaintiff never defaulted in her loan payments to New England Mutual.

Sometime in the spring of 1959, a "No Parking" sign was painted over the lines marking the two parking places in front of defendant's store. The identity of the sign painter was not established at trial but we will assume that it was done by plaintiff or her agent. Defendant testified that his monthly gross receipts dropped after this and, due to the decline, he closed his store in May or June, 1960. Rent was paid through June, 1960.

Defendant found a subtenant who wanted to open a branch of the Village Pizza Shops there. The lease provided for subleasing by the tenant with the written consent of the lessor. This written consent was never obtained. Defendant testified that a verbal approval was given by an agent of the plaintiff and that on the basis of this verbal approval, the proposed subtenant

began making alterations to the premises. The words spoken by plaintiff's agent on which defendant relies as a waiver of the written consent of plaintiff were, "Yes, so far as he knew, it was all right", i.e., to go ahead. When the plaintiff refused to sign a building permit for the proposed alterations the subtenant left.

· One year later, in August, 1961, plaintiff-lessor confessed judgment against defendant for the unpaid rent for the entire term of the lease, $16,905. This judgment was opened in September, 1962, on defendant's petition on the ground that the amount of the judgment was admittedly excessive, plaintiff having sublet the store in September, 1961, and in January, 1962, having sold the property. At the start of the trial, the lower court ruled that the plaintiff was the real party in interest and that the caption was proper. After all the evidence had been presented the trial judge directed the jury to find a verdict for the plaintiff. The court en banc rejected defendant's motion for a new trial and entered judgment on the directed verdict.

In directing a verdict against one party the court must accept as true all the evidence of that party which supports his contention, except such testimony as is inherently improbable, or is contradicted by unimpeached writings or unquestioned physical facts, and must reject all the adverse testimony of the party seeking a directed verdict. *Statler v. Penna. R. R. Co.,* 299 Pa. 321. The foregoing facts have been stated with that rule in mind.

No one questions the mathematical correctness of the verdict as directed. Defendant claims that either the plaintiff's complaint should have been dismissed or he, defendant, should have been given a new trial. Defendant's basic argument is that there were factual questions to be determined and, therefore, the court should not have taken the case away from the jury. He also argues that the trial judge should have dismissed

the plaintiff's complaint because the plaintiff was not the real party in interest. We will treat this latter contention first.

Defendant argues that the plaintiff having assigned the lease to New England Mutual Life Insurance Company is not the real party in interest. With this we cannot agree. The assignment was made for collateral purposes only. The right to collect the rents was reserved to the plaintiff so long as she did not default in her mortgage payments. The plaintiff had the power to discharge the obligation for rent under the terms of the assignment. Only upon default in the mortgage payments did the assignee have the right to collect the rents. Inasmuch as she had not defaulted in her mortgage payments we have no difficulty in coming to the conclusion that the plaintiff was the real party in interest. In addition, this defense should have been raised prior to trial. The defendant had a copy of the assignment for over four years before the judgment was opened. See 2 Goodrich-Amram §2003-2.

Defendant contends that it was a factual question for the jury to determine whether or not the plaintiff orally waived the requirement in the lease that any consent to a subletting must be in writing signed by the lessor-plaintiff. Even if this issue had been submitted to the jury and it had been determined that the plaintiff had orally waived the requirement in the lease it would not have helped the defendant. The defendant as the original lessee would have continued to be liable for the rent even if the plaintiff consented to a subletting unless the plaintiff also agreed to release the defendant from his obligation. *Sinberg v. Davis,* 285 Pa. 426. In the record in this case there is not the slightest suggestion that the plaintiff intended to release the defendant from his covenant to pay rent. We also agree with the lower court, as set forth in the able opinion of Judge PRICE, that there was insufficient evi-

dence of waiver to justify sending the question to a jury.

Finally, defendant argues that the removal of the two parking spaces directly in front of his store is in violation of the terms of the lease and that the jury should have been permitted to determine if such violation existed. Whether the defendant claims that he was evicted from the parking places or that the express covenant of quiet enjoyment in his favor was violated is not clear. In either event the defendant's contentions can be answered by an examination of the lease. Where, as here, the lease is in writing and free of ambiguity its interpretation and construction are for the court and words must be given their ordinary meaning. *National Biscuit Co. v. Baehr Bros.*, 203 Pa. Superior Ct. 133.

The plaintiff leased a storeroom to the defendant in a shopping center. After a paragraph describing the storeroom building the lease contains a section called "Parking Area." Under that section defendant was given an easement in all the land that may from time to time be set aside for free parking to be used by the defendant, his invitees, customers and the general public but subject to the same rights to be enjoyed by other lessees and occupants of the shopping center. It was provided that the plaintiff should "arrange" the parking areas. The last sentence of the "Parking Area" paragraph provided that the parking areas should remain under plaintiff's control.

What then did the defendant get so far as parking was concerned? He got the right together with all other tenants in the shopping center and the general public to use the parking area set aside "from time to time" by plaintiff. This included the right to use, together with all other tenants and the general public, the two parking spaces marked in front of his store when so set aside. He did not have the exclusive right

to use those two parking spaces and his rights in those two spaces rose no higher than the rights of the other tenants and their customers. If someone else chose to park in those spaces the defendant could do nothing about it. He had no right to have those particular spaces remain for his parking use. The plaintiff retained control of the parking areas and had the right to arrange the parking including that adjacent to defendant's premises. "Arrange" is defined in Webster's Third New International Dictionary as "to put in correct, convenient or desired order. . . ." It is clear that the intention of the parties was that the plaintiff-lessor should have the right at any time to arrange the parking for the best interest of the shopping center. When the plaintiff eliminated the two parking spaces in front of defendant's store she was simply exercising her rights under the lease. The defendant still had the use of many other parking spaces in the shopping center several of which were quite close to his store.

The two parking spaces were not a part of the premises demised to the defendant. The defendant did not have an easement for parking in any particular parking spaces in the shopping center. He had a right to use such parking spaces as the plaintiff should arrange from time to time. When the plaintiff took away the two parking spaces she did not deprive the defendant of any right which he was given under the lease either by express words or by implication. Such action is neither an eviction nor is it a violation of the covenant of quiet enjoyment.

Judgment affirmed.