369 A.2d 458

**Eugene POLLOCK and Rose One-Hour Cleaners, Inc. t/a Great Valley One-Hour Cleaners, a Pennsylvania Corporation, Appellants,**

**v.**

**Thomas MORELLI t/a Great Valley Center.**

Superior Court of Pennsylvania.

Argued March 19, 1976.

Decided Nov. 22, 1976.

M. Stuart Goldin, Philadelphia, for appellants.
Joseph R. Polito, Jr., West Chester, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This appeal arises from the adjudication of the chancellor that the implied covenant of quiet enjoyment in the appellants' lease was not breached by their lessor, Thomas Morelli, and the consequent failure of the chancellor to find damages in the form of relocation expenses and lost profits of appellants' business.

In January and early February 1971, appellant Eugene Pollock purchased a dry cleaning business situated in Great Valley Shopping Center. In the process of acquiring the business, Mr. Pollock entered into a seven and one half year lease, with appellee as lessor, for the premises in which the dry cleaning establishment was located. At that time the shopping center was composed of two rectangular blocks of stores which met at their inside corners to form, roughly, an L shape, leaving a large open area for parking in the inside angle of the L and a small square of parking in the corner where the two blocks joined. Appellants' store was in this corner immediately adjacent to the small parking area, recessed from the sidewalk fronting all the other shops in such a way as to permit access directly from both parking areas, some spaces of which were as close as 20 feet from the door. Appellants' show windows and overhead sign were easily visible to potential customers using the shopping center. Conveniently for shoppers, the dry cleaning store was next door to a large supermarket.

In November of 1971, without prior notice to appellant, construction began for what appellee termed a "mini mall" which was to enclose and surround appellants' establishment. Individual appellant, Eugene Pollock, immediately protested this development and continued to object directly to appellee. However, the con-

struction continued and at its conclusion, appellants were no longer occupying an outside store with visible display windows next to a parking lot. Instead they now have a six and one half year lease for one of eleven shops in a mall which extends over what had formerly been the small parking area. A store is located directly in front of the cleaning establishment and access is now gained by entering a set of double doors into the mall and proceeding down a hallway. The display windows are only visible from inside the mall and can be completely viewed only when a customer has passed through the double doors, traveled the full length of the hallway and turned the corner. The sign once directly over the store is now outside the mall over the discount center which is the store directly in front of appellants'. The nearest parking spaces in the remaining parking area are now 100 feet away.

Appellants brought a complaint in equity seeking an injunction compelling appellee to relocate appellants' cleaning business to a situation comparable to that previously enjoyed by them. As an alternative form of relief, they sought an injunction ordering the appellee to demolish the store in front of appellants' shop or to lease that store to appellants. The final prayer was for an award of damages and such further relief as is required. Due to an agreement between the parties by the terms of which appellants vacated the premises and were released from their obligations under the lease, we will limit our consideration to the issues of liability and damages.

In every lease of real property there will be implied a covenant of quiet enjoyment. *Raker v. G. C. Murphy Co.*, 358 Pa. 339, 58 A.2d 18 (1948); *Minnich v. Kauffman*, 265 Pa. 321, 108 A. 597 (1919). The covenant is between the landlord and his tenant and it is breached when a tenant's possession is impaired by acts of the lessor or those acting under him, or of the holder of a better title. *No. 14 Coal Co. v. Pennsylvania Coal*

*Co.*, 416 Pa. 218, 206 A.2d 57 (1965); *Einfeld v. Shermer*, 56 Pa.Super. 4 (1914). "[T]here is an implied covenant for the quiet enjoyment of the demised premises, and it is settled in this State that any wrongful act of the landlord which results in an interference of the tenant's possession, in whole or in part, is an eviction for which the landlord is liable in damages to the tenant." *Kelly v. Miller*, 249 Pa. 314, 316–17, 94 A. 1055, 1056 (1915). Recovery for breach of this covenant has been allowed in Pennsylvania where a landlord has evicted the tenant by locking up the leased premises and denying the tenant access, *Minnich v. Kauffman*, supra; *Stein v. McGinley*, 123 Pa.Super. 122, 186 A. 231 (1936), and where the landlord so substantially altered some essential features of the premises as to render the property unsuitable for the purpose for which it was leased. *Kelly v. Miller*, supra; *McCandless v. Findley*, 86 Pa.Super. 288 (1926). In *Kelly v. Miller*, supra, the landlord sealed off doors by which the building leased by the tenant to be used as a theater was connected to the adjoining building, which was used for theater related purposes such as dressing rooms, storage and offices. Closing off the connecting apertures was found to detract from the demise to the tenant and violate the covenant of quiet enjoyment implied in the lease. "[The openings] were part of the demised premises at the date of the lease, and any change in them to the detriment of the tenant was a violation of the tenant's implied covenant for the quiet enjoyment of the property." *Kelly v. Miller*, supra at 317, 94 A. at 1056.

Appellants point to the construction of the mini mall as a substantial alteration of the leased premises, detrimental to the business which the parties understood would be conducted thereon, and contend that this action by the landlord breached the covenant of quiet enjoyment. It is pointed out that when the store was leased for a dry cleaning establishment it was an outside store

with a prominent display window and easily accessible parking for customers. All these features made the property desirable for the location of a dry cleaning enterprise. The store was visible to potential customers using the supermarket and the rest of the shopping center, the working cleaning plant could be observed through the window, and advertisements could be displayed. Customers carrying clothes to and from the establishment would find the adjacent parking lot convenient. Each of these valuable features were lost upon construction of the mini mall. The once open, visible and accessible store is now surrounded, enclosed and cut off, without prior knowledge or consent on the part of the tenant, as effectively as if appellants were suddenly moved to an entirely different location. Furthermore, the construction itself with its attendant obstruction and confusion is indicated by appellants as a disruption of their business.

The alteration of the premises in question is analogous to that in *Kelly v. Miller*, supra. In both situations the utility of the property leased is substantially decreased due to the basic structural changes wrought by the landlord. Just as in *Kelly*, where the feature that made the property desirable, the connecting doors, was eliminated, in the present case the attractive features of the demised premises were eliminated by the acts of the landlord. These acts substantially interfered with the tenant's anticipated use of the premises and represent a breach of the covenant of quiet enjoyment.[1]

1. The lower court and the appellee rely on *Tucker v. DuPuy*, 210 Pa. 461, 60 A. 4 (1904) to support the position that the acts of the landlord in the present case do not amount to a breach of the covenant of quiet enjoyment. The tenants in *Tucker* contended that the covenant was breached when the building housing their doctors' offices was remodeled by another tenant as a hotel, alleging that the construction and the operation of the hotel made their offices unsuitable for the practice of medicine. The court affirmed the order sustaining the demurrer of the landlord, noting that there was no allegation that the premises were entered or the tenants' possession disturbed by the landlord. The covenant

The use of windows and pathways granting access to the leased structure, as well as a visible location, has been found in other jurisdictions to be protected by the covenant of quiet enjoyment. Thus in *Owsley v. Hamner*, 36 Cal.2d 710, 227 P.2d 263 (1951) it was held that where tenants leased a store which enjoyed an adjacent patio with display windows and passageways connecting the patio with the store and two streets, an attempt by the landlord to close the passages and eliminate the patio would be detrimental to the tenants' business and so substantially impair the leased premises as to violate the covenant of quiet enjoyment. The covenant of quiet enjoyment was found to be breached and the tenant evicted from a portion of the leased premises again in *James v. Haley*, 212 Cal. 142, 297 P. 920 (1931). The tenant in that case constructed a real estate office on the leased property, but during the term of his lease the landlord caused two buildings and a high fence to be constructed within inches of the tenant's building, blocking the public's view of the building and occupying portions of the premises previously used by the tenant for advertising. In *Leventhal v. Straus*, 197 Misc. 798, 95 N.Y.S.2d 883 (1950) it was held that the covenant was breached when the landlord constructed a porch over the one window in the tenant's apartment in such a way as to cut out the natural light and reduce the circulation of fresh air to the interior, the court noting that the tenant's right to bene-

of quiet enjoyment was defined as ensuring only that the tenant would not be disturbed by good title in the possession of the demised premises. This case precedes those which recognize that the covenant protects a tenant from wrongful acts of the landlord with respect to the tenant's possession so that the tenant is prevented from utilizing the demised property as it was intended to be used. Furthermore, in *Tucker*, the chief complaint of the tenant doctors concerned the changed character of the premises: a hotel for men, a bar, the gathering of idlers. These facts distinguish it from the present case where the objection is not to third party tenants or their effect on the atmosphere of the shopping center, but to the change in the structural nature and the physical design of the demised premises.

ficial enjoyment extended to some extent beyond the interior of the apartment including certain rights of access, light and ventilation with which the landlord could not interfere. The Supreme Court of Massachusetts in *Winchester v. O'Brien*, 266 Mass. 33, 164 N.E. 807 (1929) found for the tenant on the basis of similar reasoning stating that a substantial and continued interference with the tenant's dentistry practice occurred when the noise, dirt and obstruction of prolonged construction embarked upon by the landlord, plus sporadic interruptions of utilities incident thereto, impaired the character and value of the leased premises.[2]

In view of the decisions of the court of this Commonwealth and other jurisdictions which recognize a tenant's right to the use of the leased property without disruption by the landlord, it is clear that a remedy exists in favor of the appellant-tenants in the present case due to the landlord's activity in making structural changes detrimental to the tenant without obtaining his consent. Because the parties have already come to an agreement releasing the tenants from their rights and obligations under the lease, the equitable remedy of injunction is no longer appropriate. However, appellants can be awarded damages. *Barndollar v. Groszkiewicz*, 178 Pa.

2. Following are some cases from other jurisdictions which are in accord with those cited in the text with similar facts and rationale. *Pierce v. Nash*, 126 Cal.App.2d 606, 272 P.2d 938 (1954) (posts constructed in middle of pool hall); *Carner v. Shapiro*, 106 So.2d 87 (Fla.App.1958) (remodeling office building to detriment of tenant's retail clothing store); *Reste Realty Corp. v. Cooper*, 53 N.J. 444, 251 A.2d 268 (1969) (flooding of offices); *Carpenters' Local 1686 v. Wallis*, 205 Okl. 285, 237 P.2d 905 (1951) (remodeling conducted without consent of tenant); *Richker v. Geogandis*, 323 S.W.2d 90 (Tex.Civ.App.1959) (barricade built in front of tenant's cafe and construction). See *Bromberger v. Empire Flashlight Co.*, 138 Misc. 754, 246 N.Y.S. 67 (1930); *Platou v. Swanton*, 59 N.D. 466, 230 N.W. 725 (1930). Deprivation of or change in a portion of parking areas have not been held by this Commonwealth and other jurisdictions to constitute a breach of quiet enjoyment. *Lott v. Guiden*, 205 Pa.Super. 519, 211 A.2d 72 (1965); *Joseph v. Hustad Corp.*, 153 Mont. 121, 454 P.2d 916 (1969).

Super. 110, 113 A.2d 154 (1955). In cases of breach of the covenant of quiet enjoyment, or where the tenant is deprived of the beneficial enjoyment of the premises, it has been held that damages can be awarded for losses which can be proved. *Minnich v. Kauffman,* supra; *Kelly v. Miller,* supra. "The general rule laid down in the cases cited is, that the lessee may recover . . . for all losses which he can prove he has actually sustained, or which he will necessarily sustain, under the circumstances, as a result of the unlawful eviction. The measure of damages has been liberally extended to include even well established profits of the business . . .." *Minnich v. Kauffman,* supra, at 323, 108 A. at 598. *Accord, Pierce v. Nash,* 126 Cal.App.2d 606, 272 P.2d 938 (1954) (loss of prospective earnings); *James v. Haley* supra (recovery of any damages resulting from whole or partial eviction); *Carner v. Shapiro,* 106 So.2d 87 (Fla. App.1958) (damages for invasion of tenant's rights); *Winchester v. O'Brien,* supra (injunctive relief denied but damages allowed for interference with tenant's beneficial enjoyment).

Damages for alleged lost profits however, cannot be awarded where they are merely speculative. Evidence must be introduced which forms a sufficient basis for estimating with reasonable certainty the amount of the lost anticipated profits. *Exton Drive-In, Inc. v. Home Indemnity Co.,* 436 Pa. 480, 261 A.2d 319 (1969), *cert. denied,* 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970); *Western Show Co. v. Mix,* 308 Pa. 215, 162 A. 667 (1932); Restatement of Contracts § 331 (1932). Whereas recovery for the lost profits of an established business are considered ascertainable to a reasonable degree of certainty, *Guady v. Seaman,* 188 Pa.Super. 475, 149 A.2d 523 (1959), when a business is new and untried, courts have declared the measure of anticipated profits too speculative to provide a basis for an award of damages. *Exton Drive-In, Inc. v. Home Indemnity Co.,*

398

supra; *Platou v. Swanton*, 59 N.D. 466, 230 N.W. 725 (1930). *See also, Carpenters' Local 1686 v. Wallis*, 205 Okl. 285, 237 P.2d 905 (1951); *Richker v. Georgandis*, 323 S.W.2d 90 (Tex.Civ.App.1959).

█ In the present case, appellants' dry cleaning business was only in operation for nine months before the landlord commenced construction of the mall. Appellant sought to show a reduction of profits by introducing an accountant who testified that the store's profits did not increase according to his projections. The estimation of the anticipated increase was of necessity based only on the nine months of operation preceding the construction which allegedly marked the beginning of the decline of the business. The lower court found, and we agree, that the basis for the accountant's projections and estimation of increasing profits is not established in the record. No foundation is laid for the assumption that the business would increase annually or that it would increase at the percentage the accountant estimated from the first few months of operation. Consequently we cannot permit a recovery for lost profits.

█ However, our holding that the anticipated profits were too speculative to support an award of damages does not defeat appellant's claim for damages. There was evidence in the record relating to the cost of moving appellants' enterprise to a suitable location. Appellant would be entitled to recover such an expense from the landlord whose actions compelled the relocation of the business, *Minnich v. Kauffman* supra, and the difficulties of proof involved in establishing such uncertain matters as future profits are not present. *Guady v. Seaman*, supra. Because the lower court neglected to consider this element of damages in its adjudication, the case must be remanded to determine appellants' moving

expenses, if any, and enter the same in judgment for the appellants.

Decree reversed and case remanded for proceedings consistent with this opinion.

SPAETH, J., files a concurring and dissenting opinion.

SPAETH, Judge, concurring and dissenting:

I agree with the majority that appellee should pay damages for denying appellant the quiet enjoyment of the demised premises. However, I disagree in two respects with the majority's instructions on remand.

## 1

The majority says that "the case must be remanded to determine appellants' moving expenses, if any, and enter the same in judgment for appellants." Majority opinion at p. 398. I assume, from the "if any," that this means that the lower court is free on remand, either to enter judgment in the amount of the moving expenses appellants proved, or to say that because it does not (for some reason) accept that proof, it will enter judgment in a lesser amount or even for no amount at all. I do not think this fair to appellants. Appellants proved their moving expenses. The proof was not contradicted; the lower court simply ignored it. The least we should do is remand with instructions that judgment be entered for appellants in the amount of the moving expenses proved, specifically for $10,000.00.

## 2

The majority characterizes appellants' proof of loss of anticipated profits as "too speculative to support an award of damages." Majority opinion at p. 398.

While it is true that appellants had operated the business for only nine months before appellee started build-

ing the mall, their immediate predecessor had operated it for over a year. (R. 212a–216a.) Appellants presented evidence of the monthly receipts during their predecessor's tenure. (Supp.R. 6b.) The business was therefore not "new and untried," as the majority suggests it was. Majority opinion at p. 397.

The majority seems to reach its conclusion that the business was "new and untried" by a comparison of appellants' business with the business described in *Exton Drive-In, Inc. v. Home Indemnity Co.*, 436 Pa. 480, 261 A.2d 319 (1969), *cert. denied*, 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970). Such a comparison leads me to an opposite conclusion. In *Exton* the business had *never* been in operation before the time of the alleged breach of contract. Thus appellants' business has been operated twenty-three months longer than that in *Exton;* I suggest that is sufficient to remove it from the category of "new and untried." The majority also cites *Guady v. Seaman*, 188 Pa.Super. 475, 149 A.2d 523 (1959). There we held that testimony as to lost profits was admissible when based on three periods of actual operation of the business in question: eight and one-half months at a first location; two weeks and "two or three days" at the location where the defendant-lessor allegedly breached his duty to supply water; and an indefinite period of time (from sometime in 1954 until the time of trial) at a third location. The present case thus falls between the poles of *Exton* and *Guady*. For me, it is closer to *Guady* than to *Exton*. I would therefore hold that appellants presented sufficient proof of lost profits.

Finally, if in fact the basis for the accountant's projections was inadequate, the fault was largely appellee's. The majority says, "No foundation is laid for the assumption that the business would increase annually . . .." Majority opinion at p. 398. A foundation could have been laid if appellee had not within less than a year entirely, and in the most high-handed way, altered

the situation within which the business was conducted. Proof of anticipated profits need only be to a reasonable degree of certainty. "Compensation for breach of contract cannot be justly refused because proof of the exact amount of loss is not produced, for there is judicial recognition of the difficulty or even impossibility of the production of such proof. What the law does require . . . is that the evidence shall *with a fair degree of probability* establish a basis for the assessment of damages." *Massachusetts Bonding & Insurance Co. v. Johnston & Harder, Inc.*, 343 Pa. 270, 280, 22 A.2d 709, 714 (1941) (emphasis added); *see also Restatement of Contracts* § 331(1) (1932). Where the proof has been made more difficult by the party causing the loss, there should be some relaxation in the degree of certainty required. Otherwise the wrongdoer is enabled to profit from his own misconduct—a result to be avoided. *Cf. Restatement of Contracts* § 315 (breach by preventing or hindering performance by the other party).

In my opinion, the fairest way to handle this case would be to remand for a new trial limited to damages. We regularly do that in other cases where the liability has been clearly established but the damages awarded are clearly inadequate. *Rosen v. Slough*, 212 Pa.Super. 398, 402, 242 A.2d 898, 900 (1968). I would do it here.