J-S49002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| OXFORD TOWER APARTMENTS, LP, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| FRENCHIE'S HAIR BOUTIQUE AND ROLANDE S. CHRISTOPHE, | |
| Appellees | No. 429 EDA 2019 |

Appeal from the Judgment Entered March 11, 2019
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): June Term 2018 1488

BEFORE:  BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.*

MEMORANDUM BY BENDER, P.J.E.:          **FILED JANUARY 10, 2020**

Appellant, Oxford Tower Apartments, LP, appeals from the March 11, 2019 judgment entered in favor of Appellees, Frenchie's Hair Boutique ("Frenchie's") and Rolande S. Christophe ("Ms. Christophe"), after a non-jury trial on Appellant's breach of contract action.  After careful review, we affirm.[1]

Ms. Christophe is the owner of Frenchie's, a limited liability corporation, which sells hair extensions, clothing, and accessories.  Ms. Christophe entered into a three-year commercial lease with Appellant on September 6, 2016, for

---

* Former Justice specially assigned to the Superior Court.

[1] We note that Appellees have failed to file an appellate brief.

a small retail storefront located at 7215C Rising Sun Avenue, Philadelphia, Pennsylvania.

This action began on June 13, 2018, as an appeal from a decision rendered in municipal court.[2] A trial was initially scheduled for September 10, 2018, and a settlement conference was set for August 28, 2018. On July 3, 2018, Appellant filed a breach of contract action against Appellees, seeking unpaid rent and possession of the property. After several continuances by the court, a two-day non-jury trial began on December 3, 2018, and concluded on December 11, 2018.

At trial, Appellant's property manager, Toby Strumpf, testified regarding Appellees' rent arrears in the amount of $15,583.00, plus attorneys' fees and costs, and claimed that Ms. Christophe was still in possession of the keys to the property. N.T. Trial ("N.T. Trial I"), 12/3/18, at 15. Ms. Strumpf stated that she began contacting Ms. Christophe regarding Appellees' rent arrears in October of 2017, that a payment was subsequently received in November of 2017, and that no further payment was made until May of 2018. *Id.* at 17.

Ms. Christophe testified that she began experiencing problems with the premises from the time she entered the lease, which interfered with the

---

[2] On December 27, 2017, Appellant filed a landlord/tenant complaint in the Philadelphia Municipal Court at LT-17-12-27-6106. Appellant sought possession of the premises and a monetary judgment for unpaid rent. Appellees filed a counterclaim on May 7, 2018, seeking damages to recover for losses incurred due to Appellant's breach of contractual duties. On May 14, 2018, the municipal court granted Appellant possession and a judgment in the amount of $1,713.83 for nonpayment of rent. As to the counterclaim, the court awarded judgment in favor of Appellees in the amount of $5,139.75.

running of her business, *i.e.*, a lack of heat in the building, problems with the front door of her store, and issues with the flooring. N.T. Trial ("N.T. Trial II"), 12/11/18, at 40-46. Ms. Christophe stated that she often complained to management for Appellant about these issues, but to no avail.

In addition to these ongoing problems, a sewage pipe erupted in the store on December 19, 2017, which resulted in water and sewage throughout the first floor of Frenchie's, as well as a significant amount of water and sewage in the basement where Appellees' inventory was stored. N.T. Trial I at 21-22; N.T. Trial II at 72. Appellant did not send a maintenance crew to the store until December 27, 2017. After confirming the overflowing toilet, Appellant hired Carpet Docs to extract the water and sanitize the flooring. N.T. Trial I at 27, 31. It became apparent that the floors would have to be replaced, which would require the clearance of the whole property. Thus, Appellant asked Ms. Christophe to remove her things from the store. *Id.* at 37. An agreement was eventually reached that Ms. Christophe would remove all of her belongings from the property by March 4, 2018; however, Ms. Christophe did not move her things out until "about the 21st of March." *Id.* at 42-46. Appellant stated: "We immediately went in, sanitized, ripped up the floor, put down a whole new floor, everything was cleaned. The basement was cleaned…. That was sanitized as well. We … did whatever we needed to do to get her back up and running." *Id.* at 45. The work was completed on March 29, 2018. *Id.* at 47.

Contrary to Appellant's claims, Ms. Christophe testified that she "had to throw everything away" after the flood and that she was never able to reopen Frenchie's. N.T. Trial II at 50-51. Appellees lost everything as a result of the water and sewage. Their computer was damaged by Appellant's maintenance workers during the initial clean up, so Ms. Christophe was unable to even access customer information. Ms. Christophe indicated that she paid one month's rent in May of 2018, because Appellant had promised to fix the store and she had hoped to resume her business. *Id.* at 52. Unfortunately, she was never able to reopen the store because it smelled, and Appellant had failed to fix the heat. Ms. Christophe eventually moved Appellees' belongings out of the property on June 27, 2018, and turned in her key.[3] *Id.* at 54, 58.

On December 11, 2018, the trial court entered an order finding in favor of Appellees and against Appellant. By order dated December 31, 2018, and entered on the docket on January 2, 2019, the court vacated its December 11, 2018 order to amend the language and expressly granted Appellant immediate possession of the premises. In addition, the court found in favor of Appellees and awarded Ms. Christophe damages in the amount of $7,500.00, "due to resulting damage from a lingering faulty plumbing

---

[3] Ms. Christophe clarified that the key she turned in was the key to the back door, because after she had reported a problem with the front door, Appellant had taken her front door key for repair and had never returned it to her. *Id.* at 61.

problem, which made the [lease] … unenforceable." Trial Court Opinion ("TCO"), 4/3/19, at 1.

On January 15, 2019, Appellant filed a post-trial motion for relief, which was denied by the trial court on January 17, 2019. Appellant filed a timely notice of appeal on January 30, 2019.[4] Herein, Appellant presents the following issues for our review, which we address out of order for ease of disposition:

1. Did the trial court abuse its discretion and err as a matter of law in its decision to not award any money damages to [Appellant] where the evidence clearly indicated that [Appellant] was entitled to relief?

2. Did the trial court abuse its discretion and err as a matter of law in its inconsistent order which granted possession but denied [Appellant's] claims for [damages] and granted [Appellees'] claims for damages?

3. Did the trial court abuse its discretion and err as a matter of law in entering judgment in favor of [Appellees] on the counterclaim[,] as the amount awarded is not supported by the evidence of the law?

_____

[4] Ordinarily, an appeal properly lies from the entry of judgment, not from the order denying post-trial motions. *See generally Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511 (Pa. Super. 1995) (*en banc*). Nevertheless, a final judgment entered during pendency of an appeal is sufficient to perfect appellate jurisdiction. *Drum v. Shaull Equipment and Supply Co.*, 787 A.2d 1050 (Pa. Super. 2001). Although Appellant's notice of appeal was filed prematurely in the instant matter, judgment was subsequently entered on March 11, 2019. Thus, Appellant's notice of appeal relates forward to March 11, 2019. *See* Pa.R.A.P. 905(a)(5) (stating that a notice of appeal filed after a court's determination but before the entry of an appealable order/judgment shall be treated as if it was filed after the entry of the appealable order/judgment and on the date of entry). Hence, no jurisdictional defects impede our review.

4. Did the trial court err as a matter of law in disregarding the commercial lease contract?

5. Did the trial court abuse its discretion and err as a matter of law by bifurcating the trial for eight days, thus separating the direct testimony of [Appellant's] witness from the remainder of [t]he case and causing prejudice to [Appellant]?

Appellant's Brief at 4 (unnecessary capitalization omitted).

We apply the following standard of review to a non-jury trial verdict:

Our appellate role in cases arising from non[-]jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of the jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue … concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to facts of the case. The trial court, as the finder of fact, is free to believe all, part or none of the evidence presented. Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder.

*Gamesa Energy USA, LLC v. Ten Penn Center Associates, L.P.*, 181 A.3d 1188, 1191-92 (Pa. Super. 2018) (internal citations and quotation marks omitted).

Here, Appellant avers that the trial court abused its discretion and erred as a matter of law in its decision to not award Appellant monetary damages. Appellant presents this matter as a simple breach of contract action, in which

it alleges that Appellees continued to remain in possession of the unit and refuse to pay rent. Appellant's Brief at 8. Appellant maintains that it was not aware of any ongoing issues in the unit, that it promptly addressed any repairs requested by Appellees, and that any delays in completing the repairs were due solely to Ms. Christophe's lack of cooperation. Based on the foregoing, Appellant concludes that Appellees are obligated to pay the rent. *Id.* at 8, 12-13. The record clearly belies Appellant's claim.

From the beginning of the lease, Ms. Christophe complained of issues such as no heat in the building, which caused severe fogging on the glass front door and the formation of ice on the inside of the window. TCO at 4; N.T. Trial II at 40, 43. Her customers complained "[a]ll the time" about how cold it was in the store. N.T. Trial II at 44. Ms. Christophe testified that she repeatedly reported the heating problem to Appellant, beginning in November of 2016, but that Appellant's only response was to provide her with two small space heaters. *Id.* at 40-41. Additionally, in late 2016, Ms. Christophe was unable to use the key to open the front door of her business. Appellant took her front door key in an attempt to fix it, but never returned it to her. Thus, Ms. Christophe has been forced to enter her store through the back door ever since. TCO at 4; N.T. Trial II at 44-46. Ms. Christophe also faced issues with the flooring throughout the life of the lease. TCO at 4. She indicated that Appellant was often nonresponsive to her complaints, that her phone calls frequently went unanswered or messages were not returned, and that when

she visited Appellant's office in person on numerous occasions, she was unable to find anyone in the office to help her. N.T. Trial II at 41-42, 46.

In addition to all of these issues, in the winter of 2017, the sewage pipe erupted, "resulting in sewage and fecal matter throughout the first floor and the basement of the property[,] rendering the rented property completely useless." TCO at 4. Ms. Christophe testified that the eruption of the sewage pipe occurred on December 19, 2017, but that Appellant failed to come to inspect the damage until December 27th. N.T. Trial II at 46, 49. Video footage, taken by Ms. Christophe on either December 27th or December 28th, was produced at trial as evidence of significant water in the basement. *Id.* at 72. Appellees argued that, based upon the emergency events that occurred in late 2017 and early 2018, and Appellant's failure to remedy the property, they were constructively evicted from the premises. *See id.* at 80. The trial court agreed. TCO at 4.

"In every lease of real property there will be implied a covenant of quiet enjoyment." *Pollock v. Morelli*, 369 A.2d 458, 460 (Pa. Super. 1976). Acts of a landlord that substantially interfere with the tenant's anticipated use of the premises constitute a breach of this covenant. *Id.* at 461. Constructive eviction is one species of a violation of the lessee's right to quiet enjoyment. *Sears, Roebuck & Co. v. 69th Street Retail Mall, L.P.*, 126 A.3d 959, 973 (Pa. Super. 2015). *Kohl v. PNC Bank Nat. Ass'n*, 912 A.2d 237, 249 (Pa. 2006) (noting that this Court has concluded repeatedly that a breach of the

covenant of quiet enjoyment can be demonstrated through constructive eviction).

> To constitute a constructive eviction, the interference by a landlord with the possession of his tenant or with the tenant's enjoyment of the demised premises must be of a substantial nature and so injurious to the tenant as to deprive him of the beneficial enjoyment of a part or the whole of the demised premises, … to which the tenant yields, abandoning the possession within a reasonable time.

**Sears,** 126 A.3d at 968 (quoting **Kuriger v. Cramer**, 498 A.2d 1331, 1338 (Pa. Super. 1985)) (emphasis omitted). "[P]roblems that might not constitute a constructive eviction were they isolated, rare, and promptly addressed by the landlord may rise to a constructive eviction when they persist, remain unremedied, and substantially interfere over time with the tenant's quiet enjoyment of the leasehold." **Id.** at 976-77.

Here, Appellees presented testimony regarding numerous ongoing problems that hindered their ability to conduct business and that remained unremedied by Appellant, despite Appellees' frequent complaints. Appellant argues that the holding in **Sears** is not applicable to the instant matter, as it suggests Appellees never surrendered the premises. However, the record clearly contradicts Appellant's claim. Ms. Christophe attempted to reopen her store, but was unable to due to "the foul odor of waste emanating from the floor." N.T. Trial II at 80. As a result, Ms. Christophe removed Appellees' belongings from the premises and surrendered the key to Appellant. N.T. Trial I at 54, 58. The trial court concluded that "Appellees presented a greater

weight of evidence and, by a preponderance of the evidence[,] [it] found for … Appellee[s]." TCO at 4.

Appellant questions the trial court's finding that Ms. Christophe's complaints regarding ongoing issues went unanswered by Appellant and essentially asks this Court to reassess the credibility of the witnesses. Appellant's Brief at 13. However, it is well-settled that we cannot substitute our judgment for that of the trier of fact. *See Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008). The trial court was free to believe certain witnesses and to disbelieve the testimony of other witnesses, as "[t]he trier of fact has the unique opportunity to see and hear subtleties of answers and movements of witnesses and parties not viewable from the cold record." *Commonwealth v. Griscavage*, 517 A.2d 1256, 1259 (Pa. 1986). The trial court concluded that the evidence presented supported a finding in favor of Appellees. TCO at 4. We deem the trial court's determination to be well-supported by the record, and we discern no abuse of discretion.

Next, we address Appellant's claim that the trial court's "ruling granting [it] possession of the property and simultaneously finding that constructive eviction occurred is inconsistent." Appellant's Brief at 15. Appellant asserts that there is no constructive eviction if the tenant continues in possession of the whole of the premises. *Id.* at 14 (citing *Kuriger*, 498 A.2d at 1338). While this is true, Appellant's argument that the theory of constructive eviction is unavailable to Appellees is based on the faulty conclusion that Appellees did not vacate the premises. *Id.* at 15. The record supports, for the purpose of

finding constructive eviction, a determination that Appellees *did* vacate the premises. ***See*** N.T. Trial II at 57-58, 61 (noting that Ms. Christophe removed Appellees' belongings from the premises at the end of June 2018, placed the key to the back door of the store—her only key to the premises at the time—in an envelope, and returned the key through the slot in Appellant's office door). Based on the foregoing, Appellant's claim is meritless.

Appellant further argues that the trial court erred in finding that the lease was unenforceable. However, the argument section of Appellant's brief consists merely of general statements unsupported by any analysis of relevant legal authority whatsoever. ***See*** Appellant's Brief at 19-21. "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." ***Coulter v. Ramsden***, 94 A.3d 1080, 1088 (Pa. Super. 2014); ***see also*** Pa.R.A.P. 2119(a) (stating that the appellant's brief "shall have …such discussion and citation of authorities as are deemed pertinent"). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." ***Coulter***, 94 A.3d at 1088 (citation omitted). This Court will not act as counsel, and will not develop arguments on behalf of an appellant. ***See id.*** at 1088-89 (stating that mere issue spotting without analysis or legal citation to support an assertion precludes appellate review of a matter). Accordingly, we deem this issue to be waived.

To the extent that Appellant suggests that the amount awarded by the trial court to Appellees was an abuse of discretion and is not supported by the record, we note:

> The duty of assessing damages is within the province of the fact-finder and should not be interfered with unless it clearly appears that the amount awarded resulted from partiality, caprice, prejudice, corruption or some other improper influence…. So long as the verdict bears a reasonable resemblance to the damages proved, it is not the function of the court to substitute its judgment for that of the [fact-finder].

***Epstein v. Saul Ewing, LLP***, 7 A.3d 303, 315 (Pa. Super. 2010) (citation omitted). "In cases of breach of the covenant of quiet enjoyment, or where the tenant is deprived of the beneficial enjoyment of the premises, … damages can be awarded for losses which can be proved." ***Pollock***, 369 A.2d at 462. "The general rule … is that [the] lessee may recover … for all losses which he can prove he has actually sustained, or which he will necessarily sustain, under the circumstances, as a result of the unlawful eviction." ***Id.*** Moreover, it is well-settled that "any wrongful act of the landlord which results in an interference of the tenant's possession, in whole or in part, is an eviction for which the landlord is liable in damages to the tenant." ***Kohl***, 912 A.2d at 248-49 (quoting ***Kelly v. Miller***, 94 A. 1055, 1056 (Pa. 1915)).

Here, Appellees' counterclaim asserts damages in the amount of $5,000.00 in lost profits and $6,928.54 in lost inventory. Appellee produced exhibits at trial containing documentation for these amounts. ***See*** N.T. Trial II at 55-57. Contrary to Appellant's claim, the trial court's award of $7,500.00

to Appellees is supported by the record and, thus, we discern no abuse of discretion.

Lastly, Appellant argues that the trial court abused its discretion and erred as a matter of law by bifurcating the trial. Appellant suggests that the "splitting of the trial was prejudicial to [its] case[.]" Appellant's Brief at 22. In response to Appellant's claim, the trial court opined:

> From the beginning of testimony, [] Appellant's counsel, Ms. Baylarian, informed the [c]ourt that she was "scheduled elsewhere at one o'clock in the afternoon." Throughout the day, both parties were less than candid to the [c]ourt about the time they needed. After [] Appellant rested and before [] Appellees put on their case[,] the [c]ourt status the matter [*sic*]. Once again, [] [Ms. Baylarian] announced to the [c]ourt that she ha[d] []to be in Municipal Court at one o'clock, which was her only concern.[] After hearing from [] Appellees that they were not in opposition to continuing the matter, the [c]ourt decided it was in the best interest to bifurcate the remaining portion of the case. After reviewing and comparing schedules, the [c]ourt and both parties agreed to December 11, 2018. This date fell on a pre-planned off[-]week for the [c]ourt and yet, the [c]ourt accommodated the requested date of the parties. At no point did [] Appellant complain of possible prejudice against [its] witness in accepting the new date to complete the trial.

TCO at 5-6 (citations to record omitted). Appellant's claim of prejudice contains nothing more than bald assertions and fails to demonstrate any actual prejudice. Moreover, we emphasize that the trial court continued the trial to accommodate *Appellant's* counsel's schedule. We deem Appellant's claim to be wholly without merit.

Accordingly, we affirm the March 11, 2019 judgment entered in favor of Appellees.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/10/20